Argued February 4; affirmed April 14, 1936

In re Carlson's Estate

PETERSON et al. v. CARLSON et al.

(56 P. (2d) 347)

*B. G. Skulason,* of Portland (Rolfe W. Skulason, of Portland, on the brief), for appellants.

*Waldemar Seton* and *Gustav Anderson,* both of Portland, for respondents.

ROSSMAN, J. The decedent, Carl A. Carlson, signed two wills in the last year of his life—one in Portland April 7, 1932, and the other in Jonkoping, Sweden, August 18, 1932. He died in the latter city January 4, 1933. The Oregon will was admitted to probate in the circuit court of Multnomah county in common form April 18, 1933. The Swedish will was tendered for probate in the same court May 10, 1934. At the conclusion of the proceeding now under review that will was admitted to probate and the order previously made in behalf of the Oregon will was rescinded. This appeal presents the issues whether the decedent revoked the Portland will, and, if he did, whether the Swedish will is entitled to probate in this state. There are no charges of undue influence or of lack of testamentary capacity. The proponents of the will signed on April 7, 1932, are the beneficiaries of that instrument. The proponent of the will signed on August 18, 1932, is the Swedish vice-consul as attorney-in-fact for its beneficiaries.

Carl A. Carlson, the individual with whose estate we are now concerned, was adjudged insane by the circuit court of Multnomah county on January 30, 1931, and was then committed to the Oregon state hospital. The witnesses who testified in this will contest proceeding did not know from whence Carlson had come, nor how long he had been in this state before he was taken into custody. The certificate of the examining physician states that Carlson was born in Sweden, that his parents were also born there, that he was 55 years old, and was a widower without children. The witnesses who testified in this proceeding gave no testimony at variance with this information, and added virtually nothing to it. In February, 1931, Victor Carlson, a brother, whose home was in California, induced Dr. Axel M. Green, superintendent of Emanuel Hospital of Portland, to assume an interest in his brother Carl. As a result, the state hospital, on March 2, 1931, released Carlson on parole, and March 10, 1931, Dr. Green was appointed his guardian. About this time Carlson was transferred to the Emanuel Hospital where he underwent a course of treatment by Dr. Leo Ricen. April 1, 1932, the state hospital granted a full discharge to Carlson, it appearing that he had recovered his sanity. During the guardianship Carlson had consulted David E. Lofgren, the guardian's attorney, on several occasions concerning the making of a will. April 7, 1932, he again spoke to Mr. Lofgren upon that subject, stating that he would like to include in his will bequests for both Dr. Green and Mr. Lofgren. The latter informed him that under those circumstances he could not write the will, and Carlson then repaired to the office of Mr. J. J. Crossley, another attorney. Here the will of April 7, 1932, was prepared and signed. It included

a bequest of $2,000 for Dr. Green and $1,000 for Mr. Lofgren. One-half of the residue of the estate was given to Victor Carlson, and the other half to Emanuel Hospital. After Carlson had signed the will he took it, and also the carbon copy which Mr. Crossley's stenographer had prepared for their office files, and then departed. The will was never seen again. Carlson later called upon Mr. Lofgren, informing him of what he had done, and a few days later told Dr. Green that he had signed a will containing a bequest of $2,000 in his favor. An explanation is made that the $2,000 bequest to Dr. Green and the $1,000 bequest to Mr. Lofgren were intended as compensation for the services which these two men had rendered during the period of the guardianship. We notice, however, that the guardian's reports show disbursements made to these two men during the guardianship, and that the guardian's final report which was prepared by Mr. Lofgren and filed by the guardian April 11, 1932, states: ''The compensation of the guardian and his attorney have been settled with the ward.'' We also notice that on May 15, 1931, the circuit court signed an order allowing Lofgren $200 as additional compensation for services which he had rendered the guardian, and Dr. Green $100 additional compensation. Shortly after the will was signed Carlson made a further payment of $500 to Lofgren for his services.

The inventory which the guardian filed showed that Carlson possessed an estate consisting of $5,195.09 cash, and securities of the value of $12,500. All agree that when Carlson was committed to the Oregon state hospital he had no property of any kind in Oregon. His cash was on deposit in Chicago banks, and his bonds were in the custody of a Chicago trust company. After

the Oregon will had been admitted to probate in common form these assets were brought to Portland.

About 10 days after the will was signed Carlson left Portland for Sweden. August 18, 1932, he signed the Swedish will. This left his entire estate to two women whose relationship to him is not disclosed by the evidence. About five months later, that is, on January 4, 1933, he died. At the time of his death he had no property whatever in the state of Oregon, and, apparently, all of the securities listed in the guardian's inventory were still in the possession of the Chicago bank.

Mr. Lofgren testified that after Carlson's death, "I wrote to the foreign department or to the American minister or consul, and asked them to check up about the estate and find whether there was a will". He received a reply that Carlson had made a new will in Sweden, and that no trace could be found of the will signed in Oregon. Additional searches failed to locate the Oregon will. For the purposes of its probate the proponents of that will obtained a copy through the transcribed stenographic notes. The beneficiaries of the Swedish will proceeded with its probate in that country. A certified copy of that will was presented to the circuit court of this state, together with certificates signed by the judge and the clerk of the Swedish court to which it was presented for probate. These certificates state that the will "was proven in said court by the two witnesses thereunto attached, who both testified that the testator declared the same to be his last will and testament in their presence and they did then and there at his request, in his presence and in the presence of each other subscribe their names as witnesses thereto, * * * ." The Swedish will

makes no mention of the Oregon will. The above, we believe, is a fair resume of the material facts.

■ It will be observed that when the Oregon will was last seen it was in Carlson's possession, and that the searches which have been made for it since Carlson's death have failed to locate it. From *Miller's Will*, 49 Or. 452, (90 P. 1002, 124 Am. St. Rep. 1051, 14 Ann. Cas. 277), we quote:

"If, when last seen, the will is shown to have been in the possession of the testatrix, and cannot be found, it must be presumed, in the absence of other evidence, that she destroyed it; * * *"

From *McCoy's Will,* 49 Or. 579 (90 P. 1105), we quote:

"It must, we think, be taken for granted, therefore, that the will when last seen was in the custody of the testator, and since it could not be found after his death a legal presumption is raised that it was destroyed by him with the intention of revoking it, and the burden of proof is on the proponent to overcome this presumption * * *"

See to the same effect *Flanders v. White,* 142 Or. 375 (18 P. (2d) 823). From Page on Wills, (2d Ed.) § 773, we quote:

"If a will or codicil, known to have been in existence during testator's lifetime, and in his custody, or where he had ready access to it, can not be found at his death, a presumption arises that such will was destroyed by testator in his lifetime with the intention of revoking it; and in the absence of rebutting evidence this presumption is sufficient to justify a finding that the will was revoked. This presumption has been adopted as the rule which conforms most to the actual facts of human life. While wills are occasionally destroyed by disinherited heirs, they are much more frequently destroyed by testator, with the intention of revoking them. This presumption, therefore, takes the normal

case as the standard; and requires affirmative evidence of the abnormal case.''

See to like effect Alexander, Commentaries on Wills, p. 2012; 68 C. J., Wills, p. 992, § 759; and 28 R. C. L., Wills, p. 384, § 388.

■ Without adverting to the facts again, we state that the evidence fully establishes the premise out of which a presumption of revocation is authorized in this proceeding. The proponents of the Oregon will have proved no circumstance whatever which indicates that the Oregon will was not revoked. Quite to the contrary, the circumstances proved are in harmony with the presumption of revocation. For instance, Carlson's experiences in Oregon—confinement in the hospital for the insane, the parole, the guardianship, confinement in a hospital, and the heavy expenses attendant thereon —must have been unhappy for him. The execution of the will arose out of these unhappy and expensive experiences. Next, we have proof that upon his return to his native land he there executed another will at complete variance with the Oregon will. Without further mention of the facts, we express our conclusion that the circumstances establish the revocation of the Oregon will.

■ Having concluded that the Oregon will has been revoked and that the circuit court, therefore, did not err when it refused to administer the decedent's estate under it, we now come to the question whether the proof in support of the Swedish will meets the requirements of § 10-516, Oregon Code 1930. The only persons who present this issue are Dr. Green, David Lofgren, Emanuel Hospital and Emanuel Charity Board, beneficiaries of the revoked will. They are the sole appellants. Section 11-207, Oregon Code 1930, provides:

"When a will has been admitted to probate, any person interested may, at any time within one year after such probate, contest the same. * * *"

From *Hahn v. Hammerstein*, 272 Mo. 248 (198 S. W. 833), we quote:

"* * * Neither was such financial interest shown by plaintiff through his claim as the devisee of a prior will, and his application for the probate thereof (which was rejected). The record in this case shows that said prior will was taken by the testator from his safe-deposit box about one year before he made the present will, and there is not a scintilla of evidence in the record that it ever left the possession of the testator from that time. It was not found among his papers, nor elsewhere after his death, and he stated to the executor, Hammerstein, that he had destroyed it. Plaintiff gave no evidence whatever, contradicting the force of the legal presumption of a revocation arising upon these facts and circumstances. Indeed in his application for the probate of said will, plaintiff admitted that it had been destroyed. In this dearth of contradictory evidence, the legal presumption obtains that the testator destroyed the prior will before making the one now contested. Hence plaintiff can deduce from that will no interest in the property devised in the one under review which would qualify him under the statutes to bring this action. (Hamilton v. Crowe, 175 Mo. 1. c. 647, 648; Willitt's Es., 46 Atl. 519; Woerner, Law of Administration (2 Ed.), 91, 95; 2 Schouler, Wills (5 Ed.), sec. 1084, p. 987.)"

From *Egbert v. Egbert*, 186 Ky. 486 (217 S. W. 365), we quote:

"It may be conceded that persons who are the beneficiaries in a will have such an interest as entitles them to contest another alleged will of the same testator which destroys or reduces their share in his estate. Re Langley, 140 Cal. 126, 73 Pac. 824; Buckingham's Appeal, 57 Conn. 544; Churchill v. Neal, 142 Ga. 352, 82 S. E. 1065; McDonald v. McDonald, 142 Ind. 55, 41 N.

E. 336; Crowley v. Farley, 129 Minn. 460, 152 N. W. 872; Turhune v. Brookfield, 1 Redg. (N. Y.) 220; Merrill v. Rolston, 5 Redf. (N. Y.) 220; Murphy v. Murphy, 23 Ky. Law Rep. 1460, 65 S. W. 165. Without attempting to lay down any rule as to what the contestant should allege with respect to a prior will, it is sufficient to say that no contest based on a former will can be maintained unless the former will is in existence. Here, the contestant merely alleged the execution of the prior will making her sole devisee for life of the entire estate of the testator, and the fact that the testator safely kept and preserved it. How long he kept it, is not alleged. For aught that appears in the statement or petition, the alleged former will may have been destroyed or revoked many years before the death of the testator. We therefore conclude that the allegations of the statement or petition with respect to the former will were not sufficient to show the widow's right to contest the will in question."

From 68 C. J., Wills, p. 904, § 633, we quote:

"A beneficiary or claimant under another will, prior or later, of the same testator, has a sufficient interest to entitle him to oppose probate of the will in question, except where the other will under which he claims has been revoked."

From Alexander, Commentaries on Wills, § 1325, we quote:

"The statutes sometimes enumerate those who may contest the validity of wills. The general rule, however, whether covered by statute or not, is that those only may contest the validity of a will who would be entitled to share in the estate of the decedent had he died intestate, or should the will be denied probate."

From § 1326 of the same textbook, we quote:

"Thus, if the testator names one as executor in his will, and in a codicil thereto revokes such appointment and nominates another, the one named in the original instrument as executor has no right to contest the

validity of the codicil. * * * Nor has a creditor as such an interest in the estate of a decedent which will authorize him to contest the will, since it is immaterial by whom his claim is paid or whether the assets of the estate are administered under the will, or as in the case of intestacy. Any other rule would result in trouble, expense and delay.''

It follows from the provisions of our statute, interpreted in the light of the above authorities, that only those having an interest in the Swedish will, or in Carlson's estate, of such a character that the interest will be affected by the probating of the Swedish will are entitled to contest that will. All of the authorities are agreed that the interest must be a financial one; and it is essential that this financial interest must be adversely affected in order to entitle the individual to contest the proffered will. From the authorities reviewed in the preceding paragraphs—and we know none to the contrary —it is evident that a beneficiary of a revoked will has no interest in the estate of the decedent which entitles him to contest the validity or the probating of a subsequent will. The sole interest which the appellants submit is the interest which was given them by the will signed April 7, 1932; but it was subsequently revoked. Therefore, they have no interest which entitles them to question the proceedings pursued by the respondents to probate the Swedish will. No qualified person has taken any exception to those proceedings. We, therefore, are not authorized to determine the merits of the exceptions which the appellants have taken to the probating of the Swedish will.

The above, we believe, disposes of every issue requiring our attention. The decree of the circuit court will be affirmed.

CAMPBELL, C. J., KELLY and RAND, JJ., concur.