Argued April 15; affirmed May 25; rehearing denied June 15, 1937

IN RE CARLSON'S ESTATE
GREEN *v.* PETERSON ET AL.
(68 P. (2d) 119)

*B. G. Skulason* and *David E. Lofgren*, both of Portland (Skulason & Skulason, of Portland, on the brief), for appellant.

*Gustav Anderson*, of Portland (Waldemar Seton, of Portland, on the brief), for respondent.

ROSSMAN, J. The sole question presented by this appeal is whether the circuit court of Multnomah county, probate department, was justified in reducing appellant's credits in his final account to the extent of $832.10, and also in reducing the amount of claims approved by him to the extent of $559.04. Appellant, on April 18, 1933, was appointed executor of an instrument dated April 7, 1932, which he averred was the last will and testament of Carl A. Carlson, deceased. As a matter of fact, Carlson had revoked that will a few months prior to his death. When the circuit court discovered the fact of revocation, it discharged the appellant and directed him to file an accounting. A reading of *In re Carlson's Estate,* 149 Or. 314 (40 P. (2d) 743), and *In re Carlson's Estate,* 153 Or. 327 (56 P. (2d) 347), is essential to an understanding of the controversy before us.

April 7, 1932, the deceased executed a will which, after bequeathing $2,000 to Dr. Axel M. Green, the appellant, and $1,000 to David E. Lofgren, gave one-half of the residue of his estate to Victor Carlson, a brother, who resided in Berkeley, California, and the other half to Emmanuel Hospital of Portland of which the appellant is superintendent. After executing the will Carlson took possession of it and also insisted upon and received possession of the carbon copy which the draftsman had prepared for his files. Neither instrument was ever seen again so far as the record discloses, although a search was later made for both. Shortly after the execution of the will Carlson left for his native Sweden, never to return to America. In the early part of 1933 Victor Carlson sent a letter to the appellant, stating that his brother had died in Sweden, leaving a will executed in that country subsequent to the execution of the Oregon will. Later he came to Portland and, after conferring with the appellant and Mr. Lofgren, expressed a desire that the Oregon will be probated. An investigation was then instituted in Sweden which confirmed the information which Victor already had and which showed that the Swedish will had been admitted to probate in that country. The deceased's estate in Sweden was larger than his estate in America. Since it is intimated that the report indicated that the execution of the Swedish will was irregular, we now quote from Mr. Lofgren's testimony wherein he read into the record the translated report of his investigator:

"This is what I got from the party that made the investigation in Sweden: 'Undersigned, farmer, August Emil Swanson, Reaby Broljimark, 63 years old, and farmer Carl Edward Johansson, Reaby, Broljimark, 54 years old, who witnessed that a building contractor Carl August Carlson, in Jonkoping, the 18th day of

August, 1932, executed a testament. We will herewith undersign the obligation and certify the following concerning the surrounding circumstances: application of witnessing; at an occasion in the month of August, 1932, the day we do not recall with certainty, came building contractor, Carl August Carlson, traveling out to us in Reaby and asked us to witness his name under one by him, the 18th day of August, 1932, executed a testament which he had with him written and signed. We were present at the same time in the home of the undersigned Johansson's residence in Reaby at the time the attestation was made. Carlson declared that he had written his named under the testament, and that it was his last will and testament. The will was not read, but we both read the same. Carlson, whom we knew since 1928, was, at the occasion, of full and sound mind and acted with free will. Jonkoping, 21st of April, 1933.' The instrument was deposited in the court room in Jonkoping on the 24th of April, 1933, when the testament was proven, and a hearing was held with two witnesses.''

■■ Appellant's brief intimates, without directly charging, that Carlson did not execute his will in the presence of the witnesses and that the latter did not sign in his presence. It will be observed from the above report obtained and produced by Lofgren that the witnesses declared that they were present "at the time the attestation was made". Pope's Legal Definitions defines the word "attestation" as follows: "The act of witnessing an instrument in writing, at the request of the party making the same, and subscribing it as a witness. * * * The act of witnessing the actual execution of an instrument and subscribing the name of the witness in testimony of the fact." From the above we are justified in believing that the instrument was signed in the presence of the two witnesses who thereupon subscribed their names in his presence. At any rate, whether Carlson signed in the presence of the

witnesses or not, he nevertheless proclaimed to the witnesses that the signature to the instrument was his own. There is no competent evidence in the record concerning the law of Sweden which indicates that the above-described execution of the will was irregular. As a matter of fact, the will was admitted to probate in Sweden, and none of those who are attacking it in this state have instituted a contest of it in that country.

It is contended that under the laws of Sweden a will which bequeaths to an heir less than the sum which he would otherwise take must be served upon him at the time it is offered for probate, and it is intimated that such procedure was not followed in the instant case. The testimony concerning this purported provision of Swedish law is of very doubtful competency. But those who attacked the Swedish will in the probate department are not heirs or relatives of the deceased, and they admit that before the day of the contest the beneficiaries of the Swedish will and all of the deceased's heirs effected an understanding satisfactory to all. In fact, they admit that Victor Carlson withdrew his request that the Swedish will be contested. All agree that under those circumstances the Swedish law entitled the will to probate.

A finding is clearly warranted that the Swedish will was properly executed, that it is a valid instrument, and has been so recognized by the Swedish courts.

Notwithstanding the circumstances above mentioned, the Oregon will was tendered for probate in common form. As already stated, neither it nor its carbon copy could be located, but the stenographer's notes were transcribed and in this manner a copy was obtained. The petition offering it for probate, which was signed by the appellant, stated: "The deceased left a will bearing date the 7th day of April, 1932,

which he at that time took in his possession, but which will the petitioner has been unable to secure possession of, although an effort has been made to find the same and to secure possession of the same, which will, however, your petitioner believes and therefore alleges to be the last will and testament of the said deceased.'' Mr. Lofgren testified that the appellant ''was very reluctant to sign the petition''. The appellant, as a witness, swore: ''I was very reluctant, and informed Mr. and Mrs. Carlson in Berkeley of the same.''

According to the record, none of the information which indicated that the Oregon will had been revoked, that a later one had been executed in Sweden, and that it had been admitted to probate in that country, was disclosed to the probate judge. The deceased had no property or funds of any kind whatever in this state at the time the will was offered for probate, but the petitioner swore that he (the deceased) was an American citizen and an inhabitant of Multnomah county. The facts that warranted this statement were very scant. An order was entered admitting the will to probate and the appellant was appointed executor. Next, the latter's attorney, Mr. Lofgren, made a trip to Chicago where Carlson had a bank deposit of $375.33 and had in safekeeping bonds of the par value of $12,-500. Through the assistance of a Chicago attorney, Lofgren obtained possession of the cash and securities which he then delivered to the appellant. Later, the assets of the estate were appraised as worth $4,920.26. This low appraisal was due to the fact that the bonds, which, apart from the cash, constituted the sole assets, were in default. June 1, 1936, when final account was filed the value of the assets was reported as $4,420.26.

April 14, 1934, Eric E. Peterson, Swedish vice-consul for the state of Oregon, and attorney in fact for the beneficiaries of the Swedish will, instituted a contest of the Oregon will, at the same time offering for probate in this state the Swedish will. The contest was dismissed by the probate department upon the appellant's motion, due to a supposed irregularity, but the order of dismissal was reversed by this court: *In re Carlson's Estate*, 149 Or. 314 (40 P. (2d) 743). As a result of the reversal, costs to the extent of $101.75 were assessed against the appellant, which he paid out of the assets of the estate. After that decision recognizing a right in Peterson to contest the Oregon will, a trial was held in the probate department which resulted in a decision holding that tthe Oregon will had been revoked and that the Swedish will was entitled to probate. From that decision the appellant appealed to this court, resulting in a decision entitled *In re Carlson's Estate*, 153 Or. 327 (56 P. (2d) 347), which held that the Oregon will had been revoked and that neither Dr. Green, Mr. Lofgren nor Emmanuel Hospital had any interest which authorized them to contest the Swedish will. This decision resulted in the taxation of $49 costs against the appellant, which he paid out of the assets of the estate. After that decision had been announced the appellant filed his final account, and the objections thereto by Peterson, who had since been appointed administrator with the will annexed of the Swedish will, resulted in the controversy which is now before us. This account shows disbursements totaling $1,297.54, together with claims approved by Dr. Green amounting to $759.04, being a total of $2,056.58. The probate department approved the disbursements made and claims recommended for payment to the

extent of $665.44, and disapproved all other disbursements and recommended claims. The charges approved by the probate department are as follows:

| | |
|---|---:|
| Filing fees | $ 33.20 |
| Court reporter | 15.00 |
| Publication of notice | 4.00 |
| Appraiser's fees | 60.00 |
| Witness fee | 30.50 |
| Minor items | 22.74 |
| Compensation for executor (Dr. Green) | 100.00 |
| Compensation for executor's attorney (Mr. Lofgren) | 100.00 |
| Compensation for legal services of David Lofgren ($250.00) and of his Chicago associate attorney ($50.00) in securing permission to transfer the bonds and cash from Chicago to Portland | 300.00 |

The appellant's final report sought approval for the following additional items which he either had paid in full or for which he sought authority to make payment:

| | |
|---|---:|
| Printing briefs in the cases on appeal | $ 42.25 |
| Costs adjudged against the appellant in the two appealed cases | 150.75 |
| Sums paid for an undertaking on appeal | 20.00 |
| Incidental expenses incurred during appeals | 62.75 |
| Fee of B. G. Skulason for presenting the first cause | 500.00 |
| Fee of B. G. Skulason for presenting the second cause | 250.00 |
| Fee for translation into English of a Swedish document | 25.00 |
| Expenses of investigation in Sweden | 18.00 |
| Compensation for appellant as executor | 231.04 |
| Compensation for David E. Lofgren as executor's attorney | 250.00 |
| Compensation for court reporter in the probate department | 56.35 |

The attacked order reduced the latter item to $15 and the two items preceding it to $100 each. All of the items above mentioned have been paid by the appellant out of funds belonging to the estate with the exception of the following: compensation for himself, for Mr. Lofgren, the $250 fee for Mr. Skulason, and the $18 item concerning the investigation in Sweden.

█ In making the adjustment of the final report, the probate judge signed and entered an order from which we now quote:

"* * * it appearing that at the time the will of which the said Axel M. Green was appointed executor was admitted to probate in common form, said proponent and his then acting attorney had information to the effect that said will had been revoked and a later will executed by said deceased, but failed to disclose said information to the court; and said later will having heretofore, on the 18th day of July, 1935, been duly produced and admitted to probate as the last will and testament of said deceased; and the said Eric E. Peterson having been duly appointed administrator with the will annexed, and having duly qualified; and it also appearing * * *"

The appellant seeks to sustain his final account which imposes upon the estate all of the expenses he incurred in endeavoring to sustain the Oregon will by claiming that he acted in good faith. But it will be observed that the probate judge found otherwise and that the record contains evidence capable of supporting his finding. The estate should not be charged for expenses incurred by the appellant in seeking to sustain a will which he did not honestly believe was the deceased's last. We do not believe that we ought to disturb this finding.

But there is still another circumstance which we shall now mention that the probate department un-

doubtedly took into consideration in determining whether these very heavy expenses should be charged exclusively against the estate. It is the fact that the appellant and Mr. Lofgren each had a personal interest in seeking to sustain the Oregon will. It will be recalled that that instrument contained a bequest of $2,000 for the former, and a bequest of $1,000 for the latter. The residuary clause divided the balance between the hospital, of which Dr. Green was the superintendent, and the deceased's brother. Since the estate amounted to but little over $4,000, Dr. Green and Mr. Lofgren would have received virtually all of it had they been able to sustain the will. Under these circumstances, the probate department was justified in requiring those having a personal interest to bear a part of the expense of the contest: *In re Jahn's Will*, 195 Iowa 74 (189 N. W. 974); *Heilman's Estate*, 21 Pa. Dist. 181.

The order attacked by this appeal states that the items allowed were charged against the estate because they were of value in conserving the estate. The respondents have not appealed.

We have carefully considered all matters presented to us, but find no error in the record. It follows that the attacked order is affirmed.

BEAN, C. J., and KELLY and CAMPBELL, JJ., concur.