228

IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL AND ALLEGED CODICIL OF BERTHA S. MYERS, DECEASED.

Argued November 21, 1955—Decided December 12, 1955.

*Mr. Fredrick J. Wallzinger* argued the cause for plaintiff-petitioner-appellant and cross-respondent.

*Mr. William Rowe* argued the cause for plaintiff-respondent, legatee-respondent and cross-appellants (*Messrs. Steelman, Lafferty & Rowe*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J.  These appeals arise out of proceedings instituted following the admission to probate of the will and codicil of Bertha Myers, deceased.

Bertha Myers died without heirs or next of kin on February 2, 1955 and her will and codicil, dated June 28, 1949 and January 11, 1950, respectively, were admitted to probate on March 3, 1955, no caveat having been filed. The present controversy took root during Bertha's lifetime following her husband Charles' death. In addition to Bertha, Charles was survived by a brother, Arthur Myers, and several nieces and nephews, including Viola Friend, the present petitioner, and the respondent Mervin G. Wiener, who is also an attorney.

Although Charles' will is not reproduced in the record before us, apparently it established a trust of which Bertha

was to receive the income during her lifetime, and she, Mervin Wiener, Max Hammerschlag, Viola's father, Arthur Myers, and William Wiener, Charles' brother-in-law, were named as executors under the will and as trustees. Mervin Wiener also served as counsel to the executor-trustees.

Controversy developed among the trustees as to the nature of the trust investments, Max Hammerschlag and Arthur Myers charging their co-trustees were making improper and speculative investments of trust funds so as to favor the income beneficiary, Bertha. Mervin Wiener was also accused of giving improper legal advice to the trustees and of acting in bad faith. These differences ripened into an action instituted in the former Chancery Division and, needless to say, the divers branches of the family were not drawn closer together by these developments.

As noted above, following Bertha's death her will and codicil were admitted to probate. By these instruments, she made substantial bequests of money to various charities and to several individuals and relatives. Mervin Wiener and his sister, Theodora M. Lowy, were the subject of specific bequests of shares of Public Service Company stock. Paul Lustbader, an attorney, was bequeathed the sum of $5,000 "for his loyal services to my late husband, Charles M. Myers."

Under paragraph 18 of the will, later amended by the codicil, a trust was created for the benefit of Bertha's "grandniece, Cecil Wiener," and her "grandnephews, Theodore Lowy, of Newark, New Jersey, and Sigmund Rothchild, of New York, New York." (Cecil Wiener is the daughter of Mervin, and Theodore Lowy is Theodora's son.) The residue of Bertha's estate was left to Mervin and Theodora. Mervin and the Federal Trust Company were named as executors. Viola Friend and her branch of the family were not mentioned in either the will or the codicil.

One day less than three months following probate, Viola filed an instrument denominated "complaint" in the Essex County Court, Probate Division, accompanied by an order to show cause, directed to Paul Lustbader and Mervin Wiener, why probate should not be set aside. Briefly summarized,

Viola's complaint alleges that Lustbader, a member of the bar of this State, was the scrivener of Bertha's will, under which he received a bequest of $5,000, and that Bertha did not have independent legal advice in the preparation of the will. Following these allegations, reference is made to the lack of family relationship, except by marriage, between Bertha and the principal legatees under her will, Mervin Wiener and Theodora Lowy and their children. Viola, it is said, "stands in the same relationship to the decedent, Bertha S. Myers, as does Theodora Lowy and Mervin G. Wiener, namely she is a niece of the husband of the decedent, Bertha S. Myers."

The complaint then relates the background of the controversy between Viola's branch of the family and Mervin G. Wiener which developed during the administration of the estate of Charles Myers, to which she adds allegations that Mervin caused Bertha to become estranged from Viola and members of her family and improperly influenced Bertha to the extent that she could not "exercise her own desires or wishes because she was under the complete domination of" Mervin. Mervin, it is alleged, "schemed and connived to cause the said Bertha S. Myers to refuse to talk to" Viola and members of her family, and Mervin and Lustbader "acting together and in concert unduly influenced and improperly persuaded the said Bertha S. Myers to execute a will in favor of" Mervin and Theodora and their respective children. All of the foregoing, it is concluded, was "calculated to and did result in great harm" to Viola.

Mervin and Lustbader countered with an order to show cause, directed to Viola and her attorney, why the complaint should not be expunged from the record, their application being based on the assertion that Viola had no standing before the court to institute a proceeding to set aside probate and that the complaint was calculatingly "scandalous and scurrilous" and was filed in bad faith.

On the oral argument which developed on the return day of the motion, Viola's attorney made an application to the court for leave to amend the complaint and to transfer the

cause to the Superior Court, Chancery Division. Decision on all applications before the court was reserved pending the submission by Viola's counsel to the court of further evidence to establish Viola's right to institute a proceeding to set aside probate of the will. Such evidence was submitted in the form of affidavits by Viola and her husband to the effect that in conversations they had had with Bertha Myers in 1940 and 1941 she had indicated her will contained "the same provisions as that of" Charles, under which Viola had a contingent interest, and that she desired to make a specific bequest of certain jewelry and furniture to Viola and to make Viola's father her executor. There was no proof offered to show that a will containing such provisions had ever been in existence.

Following the receipt of these affidavits, and upon further argument, the County Court entered an order dismissing the complaint "without prejudice to the right of the said Viola H. Friend to institute such other or further proceedings as she may desire" and denying Viola's application for leave to amend her complaint and to transfer the action to the Superior Court, Chancery Division. The respondents' motion to expunge the complaint from the record of the court was also denied.

Viola appeals from so much of the order as dismissed her complaint and denied her application for leave to amend and to transfer. Mervin Wiener and Lustbader cross appeal from that portion of the order which denied their motion to expunge the complaint from the record. We granted certification on our own motion prior to disposition in the Appellate Division.

The crucial inquiry on the main appeal is Viola's standing to attack the probate of Bertha's will. *R. R.* 5:3–4, pursuant to which her complaint was filed, provides:

"(a) Any person aggrieved by a judgment of the surrogate's court of any county may move before the county court of the county, on notice to the plaintiff, for an order requiring him to show cause why the judgment should not be set aside or modified; provided however notice of the motion is served upon the plaintiff

within 3 months after entry of the judgment, or within 6 months thereafter in cases where the moving party resided out of this State at the entry of the judgment.

(b) Any person interested in a judgment of the surrogate's court of any county, who seeks relief under Rule 4:62 or because of fraud upon the court, may, without notice, move before the county court of the county for an order directed to the other persons in interest requiring them to show cause why the relief sought by him should not be granted; or upon cause shown, the court may grant the relief without issuing an order to show cause. Where the relief is sought under Rule 4:62–2 because of mistake, inadvertence, surprise, or excusable neglect or because of newly discovered evidence or because of fraud, misrepresentation, or misconduct, other than fraud upon the court, the application for an order to show cause or for the relief shall be made within 3 months after entry of the judgment, or within 6 months thereafter in cases where the moving party resided out of this State at the entry of the judgment."

Before us Viola concedes she is not a "person aggrieved" by the judgment of probate which was entered in the Surrogate's Court on March 3, 1955. She claims, however, she is a "person interested" in the judgment of the Surrogate's Court within the meaning of *R. R.* 5:3–4(*b*) quoted above and is therefore entitled to maintain this proceeding. Her contention rests upon the proposition that the difference in wording between subsections (a) and (b) of the rule denotes a substantive variance in degree of interest required to obtain the specified relief, and that a person may be "interested" in the judgment of the surrogate even though she has no pecuniary interest which is directly affected by the judgment, as would be necessary in the case of an "aggrieved" party. See, *e. g., In re Rogers' Estate*, 15 *N. J. Super.* 189, 200 (*Cty. Ct.* 1951) ; *In re Gaeta*, 139 *N. J. Eq.* 44 (*Prerog.* 1946) ; *In re Young's Will*, 67 *N. J. Eq.* 553, 559 (*Prerog.* 1904).

We cannot agree with the construction contended for by the appellant. The manifest purpose of *R. R.* 5:3–4 is simply to establish the procedure by which judgments of the surrogate, following entry, may be reviewed by the County Court in accordance with the latter's statutory jurisdiction. See *N. J. S.* 3A:2–3. It is the companion rule to *R. R.* 5:3–3, which provides for the withdrawal of probate pro-

ceedings from the Surrogate's Court when a caveat has been filed or doubts exist on the face of the will, in which case "any person in interest" may move before the County Court to obtain relief in a probate proceeding prior to the entry of any judgment in the Surrogate's Court.

█ Obviously, the rule does not serve the purpose of enlarging the class of persons who have standing to contest probate. The test of appellant's standing under *R. R.* 5:3–4(*b*) is the same as that applied to one who seeks to contest probate prior to judgment; in other words, does appellant qualify as a caveatrix? If not, she is not a "person interested" under *R. R.* 5:3–4(*b*). For surely there would be little merit in providing that a party who has no standing to contest the action about to be taken by the court may nevertheless move to have the judgment set aside after it has been entered.

█ The rule in this State is that no one may interpose a caveat unless she would be injured by the probate of the will propounded. This court said only recently in *In re Holibaugh's Will*, 18 *N. J.* 229, 232 (1955):

> "The issue is thus one of interest and capacity to sue and to invoke the judicial process to inquire into the testamentary sufficiency of the writing. A caveat is not maintainable by a mere volunteer; it is available only to one 'who would be injured by the probate of the will' and as such is entitled to an opportunity to be heard on the question."

See also *In re Coleman's Will*, 27 *N. J. Super.* 532, 535 (*App. Div.* 1953); *In re Van Doren's Estate*, 119 *N. J. Eq.* 80 (*Prerog.* 1935); *In re Myers' Estate*, 69 *N. J. Eq.* 793 (*E. & A.* 1905). As Judge Clapp said in *In re Coleman's Will, supra,* 27 *N. J. Super.,* at *pages* 535–536:

> "In many statutes it is stated that no one may be a contestant in a probate action unless he is a 'person in interest,' and quite universally these statutes are construed so as to require that the contestant be one who would be aggrieved by the probate."

The complaint before us fails to disclose any interest which appellant could have in the judgment of probate which would

have entitled her to file a caveat. Indeed, she specifically disavows the relationship of heir or next-of-kin of the late Bertha Myers. The cause of action stated has nothing to do with the judgment under attack but, rather, is directed to the alleged tortious conduct of Mervin Wiener and Lustbader in interfering with her relationship with her aunt and thus depriving her of any opportunity to share in her aunt's estate. Indeed, Viola acknowledges that the ultimate objective of her action is the "impression of a constructive trust" and states that because the action is founded upon "fraud, misrepresentation and misconduct, it was instituted under *R. R.* 5 :3–4(*b*)."

█ We may assume for present purposes that for the injury done her Viola may impose a constructive trust upon the proceeds of Bertha's estate which Mervin and Lustbader will take under the will. But that cause of action has nothing to do with the probate judgment and belongs not in the Probate Division but in a court exercising general equity jurisdiction. Merely because *R. R.* 5 :3–4(*b*) refers to "fraud, misrepresentation, or misconduct" does not confer general equitable jurisdiction upon the Probate Division.

Nor do the facts set forth in the affidavits filed after the complaint cure the jurisdictional defect. While elsewhere it has been held the beneficiary of a revoked will is not a "person interested" and is without standing to contest probate, *In re Carlson's Estate,* 153 *Ore.* 327, 56 *P. 2d* 347, 350 (*Sup. Ct.* 1936), the standing of such persons has been recognized, albeit *obiter dicta,* in one New Jersey case, *In re Coleman's Will, supra.* However, we need not decide that question on the present record, for Viola's affidavits fall far short of establishing that she was ever a beneficiary under any will of her late aunt.

█ We conclude, therefore, that the complaint was properly dismissed.

██ Nor was any error committed in denying appellant's application to amend the complaint or to transfer the action to the Superior Court, Chancery Division. In so far as the proposed amendment related to appellant's status as an

"interested person," she was granted sufficient time in which to present evidence in support of the amendment to the court and she failed to do so. An amendment under those circumstances would have been but form without substance. And in so far as the amendment related to the "constructive trust" cause of action, there certainly was no purpose to be served in permitting such an amendment in the Probate Division, which in any event had no jurisdiction to hear the cause.

While under our usual practice a transfer of the action to the Superior Court, Chancery Division, would be authorized under *R. R.* 1:27*D*, the court's denial of appellant's application under the particular circumstances of this case was correct. On the oral argument in the Probate Division, appellant stated an amendment of the pleadings was necessary to establish a cause of action in equity. Certainly it would not have been good practice to transfer the action to another court in the face of a concession by counsel that his complaint failed to state a cause of action cognizable in that court. Furthermore, no possible prejudice to the appellant resulted from the dismissal. The judgment dismissing the complaint was without prejudice to the institution of an action elsewhere, and the time limitation imposed by *R. R.* 5:3–4(*b*) will not bar any action brought in the Chancery Division to impose a constructive trust.

Finally, as to the cross-appeal, it has not been shown any prejudice will result from the failure of the court to expunge the complaint from the official court records, especially in view of the concession that nothing prevents Viola from filing an identical complaint in a court having jurisdiction of the cause.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.