Argued and submitted December 3, 2015, reversed May 24, 2017

In the Matter of the Estate of
Young Phillip Chin, Deceased.

Darby PRICE,
Penney Gertsch, and Robert Gertsch,
*Appellants,*

*v.*

Faye LOTLIKAR
and Shirley Ma, and
Whitney Yazzolino, Personal Representative
of the Estate of Young Phillip Chin, Deceased.
*Respondents.*

Multnomah County Circuit Court
120891121; A156635

397 P3d 54

James R. Cartwright argued the cause for appellant Darby Price. On the briefs were Matthew Whitman and Cartwright Whitman Baer PC.

John W. Whearty argued the cause for appellants Penney Gertsch and Robert Gertsch. On the brief was MacLaren & Whearty, LLP.

Anna Marie Joyce argued the cause for respondents Faye Lotlikar and Shirley Ma. On the briefs were Paul Bierly, Chad M. Colton, and Markowitz Herbold PC.

No appearance for respondent Whitney Yazzolino.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.*

---

* Garrett, J., *vice* Flynn, J. pro tempore.

**DUNCAN, P. J.**

The Oregon Probate Code allows an "interested person" to take certain actions with regard to a decedent's estate, including petitioning to reopen an estate for proper cause. The code defines an "interested person" to include "heirs, devisees, children, spouses, creditors and any others *having a property right or claim against the estate of a decedent that may be affected by the proceeding.*" ORS 111.005(19) (emphasis added).[1] The dispute in this case is over what the emphasized portion of that sentence modifies—that is, whether the phrase modifies only the term immediately preceding it—"any others"—or, alternatively, whether it modifies all of the preceding terms, so that even "heirs" must "hav[e] a property right or claim against the estate of a decedent that may be affected by the proceeding" to qualify as "interested persons."

In the proceeding below, respondents Lotlikar and Ma petitioned to reopen the estate of their deceased brother, Chin, to investigate the transfer of assets from Chin to one of his nephews, appellant Price, who had served as the personal representative of the estate. Price opposed the petition, as did one of Chin's other siblings, appellant Penney Gertsch, who was the estate's sole devisee under the will that was probated, and her husband, appellant Robert Gertsch. Appellants argued that Lotlikar and Ma, who did not have any financial interest in their brother's estate, were not "interested persons" and therefore could not petition to reopen it. Respondents countered that, as the decedent's sisters, they met the statutory definition of "heirs" and were "interested persons" by virtue of that fact alone.

The probate court agreed with respondents' expansive reading of the statute and granted their petition to reopen the estate. The court ruled that, regardless of whether Lotlikar and Ma were asserting a financial interest in Chin's estate, "interested person" is "defined broadly so that heirs and family members who do not currently have a financial interest in the estate, like [Lotlikar] and [Ma],

---

[1] ORS 111.005 was amended various times after the probate court's ruling in this case. All citations to that statute in this opinion are to the version in effect in 2014, which had been unchanged since its original enactment in 1969.

can vindicate wrongdoing in connection with the disposition of the estate." We disagree with the probate court's construction of the statute and conclude that, to be an "interested person," even heirs must have some property right or claim against the estate that may be affected by the proceeding. Accordingly, we reverse the limited judgment reopening the estate.

## BACKGROUND

Although the probate court made extensive findings of fact regarding the circumstances surrounding the petition to reopen, we confine our discussion of the facts to those pertinent to the narrow issues on appeal. The decedent, Chin, died on July 23, 2012. He was survived by his siblings, including Lotlikar, Ma, and Penny Gertsch, as well as his nephew Price, who was the son of one of Chin's other siblings, Jean Chin. In August 2012, Price filed a petition in Multnomah County Circuit Court to probate a will dated February 5, 2003. That will nominated Penny Gertsch to serve as personal representative of the estate and left the entire estate to her; in the event that she was unwilling or unable to serve as personal representative, it named Robert Gertsch to serve. Price's petition represented that both Penny and Robert Gertsch had declined to serve and requested that Price instead be appointed as personal representative.

In September 2012, the probate court admitted the 2003 will to probate as Chin's final will. At the same time, Price was appointed as personal representative. In October 2012, Lotlikar and Ma were notified that the 2003 will had been admitted to probate and were informed of the need to file any will contest within four months. That deadline passed without a contest, and Price filed a final account and petition for final distribution in February 2013. The same month, the court entered a judgment approving that final account and authorizing the final distribution. Penny Gertsch, as the sole beneficiary under the will, signed a receipt acknowledging her full distributive share of the estate, and the court entered a supplemental judgment on February 26, 2013, that closed the estate proceedings and discharged Price from duties as the personal representative.

Two days after the estate was closed, Lotlikar and Ma filed a petition to reopen it, pursuant to ORS 116.233, which provides, "Upon the petition of any interested person, the court, with such notice as it may prescribe, may order the estate of a decedent reopened if other property is discovered, if any necessary act remains unperformed or for any other proper cause appearing to the court." In declarations and a memorandum in support of the petition, Lotlikar and Ma asserted that Price, claiming to be the decedent's "long lost nephew," had used undue influence to defraud the decedent and had committed elder abuse through financial exploitation—claims that, they asserted, the estate had not investigated because Price was the personal representative. Lotlikar and Ma asserted that they "filed this petition as named heirs of the estate."

The probate court ultimately held a three-day hearing on the merits of the petition to reopen, taking testimony from various witnesses. One of the issues then before the probate court was whether Lotlikar and Ma had demonstrated that they were "interested persons" within the meaning of the probate code. Price asserted that they were not, contending that under ORS 111.005(19),

"'heirs, devisees, children, spouses, [and] creditors' are all categories of people 'having a property right or claim against the estate of a decedent that may be affected by the proceeding.' It is not enough to merely bear one of those labels: someone who fits within one of those enumerated categories only has standing to the extent that he or she also has property rights that the proceeding may affect."

(Emphasis omitted.) Lotlikar and Ma, meanwhile, contended that they met the statutory definition of "heir" because they would have been entitled to Chin's property had he died intestate, ORS 111.005(18), and therefore remained "interested persons" under ORS 111.005(19) even after the estate was closed.

The probate court agreed with Lotlikar and Ma, reaching the following conclusions of law regarding whether they were interested persons:

"Faye Lotlikar and Shirley Ma are heirs of the decedent, and they continue to have that status for purposes of the petition to reopen the estate.

"The definition of 'interested persons' in ORS 116.233 includes, among other persons, 'heirs' of the decedent. Because Faye Lotlikar and Shirley Ma are heirs of decedent, they are 'interested persons' as defined in ORS 111.005(19) and ORS 116.233.

"Further, Faye Lotlikar's and Shirley Ma's familial ties to decedent and their desire to vindicate the rights of the decedent's estate make them 'interested persons' as defined in ORS 111.005(19) and ORS 116.233. Faye Lotlikar and Shirley Ma are 'interested persons' although they did not receive assets under the estate.

"A person does not have to have a financial interest in the estate to be an 'interested person' within the meaning of ORS 111.005(19) and ORS 116.233. The term 'interested person' is defined broadly so that heirs and family members who do not currently have a financial interest in the estate, like Faye Lotlikar and Shirley Ma, can vindicate wrongdoing in connection with the disposition of the estate."

(Paragraph lettering omitted.) Having ruled that the petition was properly before it, the probate court then concluded that Lotlikar and Ma had made a *prima facie* showing of undue influence and elder abuse by Price, such that there was proper cause to reopen the estate under ORS 116.233. The court further concluded that the Gertsches, both of whom were now willing to serve as personal representative, were unsuitable for that role because they were. aligned with Price and did not intend to pursue the claims against him if the estate were reopened. The probate court then appointed an attorney, Whitney Yazzolino, who is the other respondent on appeal, to serve as personal representative, and the court entered a limited judgment memorializing its rulings. Price and the Gertsches now appeal that limited judgment.

## ANALYSIS

On appeal, the parties' central dispute is whether Lotlikar and Ma were "interested persons" within the

meaning of ORS 111.005(19).[2] The answer to that question turns on an issue of statutory construction, which we resolve by applying familiar principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). That is, we discern the meaning of ORS 111.005(19) most likely intended by the legislature that enacted it, by examining the text and context of that statute and, where appropriate, legislative history and pertinent canons of construction. *Dowell v. Oregon Mutual Ins. Co.*, 361 Or 62, 67, 388 P3d 1050 (2017).

The text of ORS 111.005(19) presents a classic ambiguity. The legislature may have intended the final phrase of the sentence to apply to all the preceding terms, such that "heirs, devisees, children, spouses, [and] creditors" must "hav[e] a property right or claim against the estate of a decedent that may be affected by the proceeding" in order to be "interested persons." Reading the statute that way, the terms "heirs," "devisees," "children," "spouses," and "creditors" are illustrative of, and clarify, the category of "others" who might have a qualifying property interest or claim against the estate. *See generally Daniel N. Gordon, PC v. Rosenblum*, 361 Or 352, 365, 393 P3d 1122 (2017) (explaining how examples provide context relevant to terms within a statute even outside the formal structure of *ejusdem generis*); *Johnson v. Gibson*, 358 Or 624, 629-30, 369 P3d 1151 (2016) (explaining *noscitur a sociis* textual canon, whereby the meaning of an unclear word may be clarified by other words in context); *see also Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 702, 375 P3d 463 (2016) ("Certainly nothing precludes the legislature from employing a measure of redundancy in its statutes; sometimes, that is what it intended.").

Alternatively, the legislature may have intended the final phrase to apply only to the immediately preceding term, "any others," such that "heirs, devisees, children,

---

[2] The Gertsches also argue that, to the extent the petition to reopen was properly before the court, they—the Gertsches, as opposed to Yazzolino—should have been appointed as personal representative. In light of our conclusion that the court erred in ruling that Lotlikar and Ma met the definition of "interested person," we do not reach the Gertsches' alternative contention.

spouses, [and] creditors" are, by that status alone, "interested persons" within the meaning of the statute.[3]

Both readings are plausible based on the text alone. However, we do not construe statutory text in isolation. Viewing the definition of "interested person" in its broader statutory and historical context, we are persuaded that the legislature intended "interested person" to include only persons—including heirs, devisees, children, spouses, creditors, and others—who have a claim or property right against the estate that may be affected by the proceeding.

As a matter of statutory context, ORS 111.005(19) was enacted as part of a landmark revision to Oregon probate law in 1969. Or Laws 1969, ch 591, § 1. The preliminary drafts of that revision were prepared by the Advisory Committee on Probate Law Revision and include commentary on particular provisions. As the Advisory Committee explained, their purpose was to simplify the probate laws while continuing to "reflect the basic idea of probate to provide an orderly procedure for collecting and distributing the assets of a decedent as speedily as possible, consistent with steps recognized as proper and with due regard to the rights and interests of all persons concerned in an estate." Commentary to Advisory Committee on Probate Law Revision Proposed Oregon Probate Code, Preliminary Draft, xiv (Dec 1968).

The definition of "interested person" appears in section 1, paragraph 19, of the preliminary drafts from the Advisory Committee, and it was enacted by the legislature without change as ORS 111.005(19). *Id.* at § 1. According to the committee's commentary to section 1, the definition of "interested person" was adapted from a draft of the Uniform Probate Code. *Id.* (identifying definitions, including for

---

[3] In contending that the final phrase does not apply to "heirs," respondents actually argue that that phrase modifies "creditors and any others," but we fail to see how that construction makes any grammatical sense. If the legislature intended to group "creditors" with "any others," and to set them off from the rest of the terms in the statute, the word "and" would appear before creditors—*i.e.*, "heirs, devisees, children, spouses, [and] creditors and any others having a property right or claim against the estate of a decedent that may be affected by the proceeding." Without that type of textual clue, there is no reason to think that the final phrase modifies more than the final term but less than all of them.

"interested person," that were "taken or adapted from definitions in the Uniform Probate Code"); *id.* at xix (stating that "Uniform Probate Code" refers to the "Third Working Draft, Uniform Probate Code, With Comments" (Draft Uniform Probate Code) which was then under consideration by the National Conference of Commissioners on Uniform State Laws). That draft defined "interested person" as follows:

> "'Interested person' includes heirs, devisees, children, spouses, creditors and any others having a property right in or claim against the estate of a decedent, ward or protected person which may be affected by the proceeding. It also includes fiduciaries representing interested persons. *The meaning may vary from time to time and, as to any particular proceeding or part thereof, its meaning must be determined according to the particular purpose and matter involved.* In respect to protective proceedings, the term includes the agencies mentioned in Section 5-506."

Draft Uniform Probate Code § 1-103(1) (emphasis added).

The Draft Uniform Probate Code, as the emphasized text demonstrates, made express the understanding that the meaning of "interested person" was determined according to the purpose and matter of the proceeding. *See also id.* at 30 (table illustrating that, in formal probate proceedings, "[i]nterested persons determined by question raised"). In that light, the text that was ultimately imported into ORS 111.005(19)—"having a property right in or claim against the estate of a decedent, ward or protected person which may be affected by the proceeding"—would have been understood to modify all of the preceding terms, such that "heirs" or "spouses" or "creditors" would only be interested in a probate proceeding if they had a property right or claim against the estate that may be affected by that proceeding. *Accord Estate of Thorne*, 1997 ME 202, 704 A2d 315, 318 (Maine 1997) (explaining that the definition of "interested person" in the Uniform Probate Code "limit[s] participation in probate proceedings to persons having an interest in the estate at issue. * * * It is thus possible that one may be an 'interested person' for the purpose of one particular probate proceeding but not another. * * * An interested person, however, will always possess an interest in the estate itself.").

'That understanding of the text of ORS 111.005(19) also better comports with the concept of "interested person" in Oregon probate law that predated the 1969 revision. Historically, probate laws in this state and throughout the country required more than generalized grievances or status as a family member in order to be considered an "interested person." *See Mills v. Feiock,* 229 Or 618, 625, 368 P2d 327 (1962) ("A relative may or may not be a 'person interested'. Those only may contest the validity of a will who would be entitled to share in the estate of the deceased had he died intestate or should the will be denied probate."). Indeed, only those persons with a *financial* interest in an estate were permitted to contest a will in probate proceedings. *E.g., In re Estate of Chas. J. Peterson,* 202 Or 4, 5, 271 P2d 658 (1954) ("[P]etitioners have no standing in court to contest the will in question as under the state of the record they would have no financial interest in the estate.").[4]

There is no indication that the drafters of Oregon's 1969 revisions intended the dramatic and fundamental shift away from those established notions of an "interested person," particularly with regard to will contests, that would result from respondents' proposed construction of the statute. That is, we are not aware of any legislative history that suggests that the drafters of the 1969 revisions to Oregon's probate laws intended to define "interested person" merely in terms of a title or abstract status, or in a way that allows for those persons to vindicate interests other than their property interests or claims against the estate. To the contrary, the legislative history of the related provision of the code regarding will contests, section 98 (later enacted as ORS 113.075), confirms that the drafters were not making such a sweeping change. That section provided:

---

[4] *See also In re Carlson's Estate,* 153 Or 327, 335, 56 P2d 347 (1936) ("'The statutes sometimes enumerate those who may contest the validity of wills. The general rule, however, whether covered by statute or not, is that those only may contest the validity of a will who would be entitled to share in the estate of the decedent had he died intestate, or should the will be denied probate.'" (Quoting Alexander, Commentaries on Wills § 1325.)); *Franke v. Shipley,* 22 Or 104, 104, 29 P 268 (1892) ("They must establish by competent proof that they were the heirs of the testator and would inherit his estate were it not for the will. 'Where a party claims as heir,' says Mr. Lawson, 'he must first establish affirmatively his relationship with the deceased; and, second, that no other descendant exists to impede the descent to the plaintiff.' 6 Lawson, Rights, Rem. & Pr. § 3138.").

"Section 98. (Contest of will) When a will has been admitted to probate, any interested person may, at any time within four months after the date of the entry in the court journal of the order of court admitting the will to probate, contest the probate of the will or the validity of the will."

The commentary to that provision states, "Section 98 is the same as [the existing statute,] ORS 115.180, except that the time for the will contest has been shortened from six months to four months to conform to the shortening of the period for creditors to file claims from six months to four months." Commentary at § 98. If the drafters were proposing a probate code that fundamentally altered the nature of who was entitled to contest a will, we cannot imagine that the commentary and other legislative history would have affirmatively suggested that no significant changes had been made.

Respondents, for their part, do not offer any persuasive contextual or historical arguments in support of such an expansive reading of the "interested person" definition.[5] Instead, their argument depends largely on a rule of statutory construction—the "doctrine of the last antecedent"—which they argue is applicable in this situation. *See PGE*, 317 Or at 611 (in examining the meaning of a statute, we consider "rules of statutory construction that bear directly on how to read the text"). Under the doctrine of the last antecedent, "'[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the 'last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'" *State v. Webb*, 324

---

[5] Respondents direct us to a statement in the Advisory Committee's comment to a provision of the proposed code that concerned appointment of a personal representative. That comment states that "Section 3-205, Uniform Probate Code, provides that the petition may be filed by any person interested. Section 11.28.110, Washington Probate Code, does not specify who may petition for the appointment. *The committee considered that any person who paid the fees and filed a petition complying with section 84 would of necessity be an interested person.*" Commentary at § 84 (emphasis added). The comment is ambiguous as to whether the committee "considered" that a person would *become* interested merely by filing a petition and paying fees, or whether someone who was interested would necessarily be the one filing a petition. Suffice it to say that we cannot draw any conclusions about the breadth of the definition of "interested person" from that cryptic sentence.

Or 380, 386, 927 P2d 79 (1996) (quoting Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.33, 270 (5th ed 1992)). "'[E]vidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.'" 324 Or at 386 (quoting Singer, 2A *Sutherland Statutory Construction* at 270).

Respondents argue that, in this case, the absence of a comma after the word "others" is textually significant: "If the Legislature had intended that all 'interested persons' must have a 'property right or claim' against the estate, then under the Rule of the Last Antecedent, a comma would appear in ORS 111.005(19) between the words 'others' and 'having.'" Because that comma does not appear in the statute, respondents argue, "the 'property right or claim' language only applies to limit the last antecedent: 'creditors and any others.'"

Respondents overlook a commonly recognized limitation on the doctrine of the last antecedent: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Porto Rico Railway, Light & Power Co. v. Mor,* 253 US 345, 348, 40 S Ct 516, 64 L Ed 944 (1920). *See also Board of Trustees of F. and P. Fund v. Templeton,* 1939 Ok 53, 184 Okla 281, 86 P2d 1000, 1004 (1939), *cited in Johnson v. Craddock et al,* 228 Or 308, 317, 365 P2d 89 (1961) ("Slight indication of legislative intent so to extend the relative term is sufficient. Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all." (Internal quotation marks and citation omitted.)); *accord* Singer, 2A *Sutherland Statutory Construction* at 270 ("Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.").

In fact, the California Court of Appeals discussed that limitation on the doctrine of the last antecedent in the context of an almost identical statutory construction question

under California's probate code. In *Lickter v. Lickter*, 189 Cal
App 4th 712, 725, 118 Cal Rptr 3d 123, 133 (2010), the plain-
tiff, relying on the doctrine of the last antecedent, asserted

> "that the closing phrase in subdivision (a)(1) of Probate
> Code section 48—'having a property right in or claim
> against a trust estate or the estate of a decedent which may
> be affected by the proceeding'—cannot be read as qualify-
> ing all of the terms that precede it—that is, 'heir, devisee,
> child, spouse, creditor, beneficiary, and any other person.'
> In their view, the closing phrase qualifies only the term
> that precedes it immediately—'any other person'—and
> thus 'an heir, devisee, child, spouse or beneficiary is always
> an 'interested person' under Section 48."

The court rejected that reading of the probate code, explaining:

> "There is an exception to [the doctrine of the last anteced-
> ent], however, which provides that [w]hen several words are
> followed by a clause which is applicable as much to the first
> and other words as to the last, the natural construction of
> the language demands that the clause be applicable to all.
>
> "Here, the phrase 'having a property right in or claim
> against a trust estate or the estate of a decedent which may
> be affected by the proceeding' is just as applicable to the
> more remote preceding terms—'heir, devisee, child, spouse,
> creditor, beneficiary'—as it is to the immediately preceding
> term—'any other person.' Thus, plaintiffs' reliance on the
> last antecedent rule is misplaced because the exception to
> that rule applies here."

*Id.* at 726, 118 Cal Rptr 3d at 133-34 (internal quotation
marks and citations omitted).

The court, in reasoning that is instructive in this
case, then proceeded to explain that its understanding of
the statute was "supported by the historical understanding
of the term 'interested person' in probate proceedings." *Id.* at
727, 118 Cal Rptr 3d at 134. Just as in Oregon, "the concept
of an 'interested person' was well developed in California
probate law," and it "included the idea that the person had
to have an interest of some sort that could be impaired,
defeated, or benefitted by the proceeding in question to be
'interested' in that proceeding." *Id.* Finding no "reason to
conclude that this concept was changed in any way by the
enactment" of revisions to the probate code, the court held

that "the exception to the last antecedent rule, rather than the rule itself, governs," such that "the status of 'heir,' by itself, is not enough to make a person an 'interested person.'" *Id.* at 728, 118 Cal Rptr 3d at 135.

For all of the foregoing reasons, we reach the same conclusion as the court in *Lickter.* We hold that the phrase "having a property right or claim against the estate of a decedent that may be affected by the proceeding" modifies all of the preceding terms in ORS 111.005(19). That is, the "interest" that makes "heirs, devisees, children, spouses, creditors and any others" into "interested persons" is a "property right or claim against the estate of a decedent that may be affected by the proceeding."

Accordingly, we conclude that the probate court erred in ruling that Lotlikar and Ma were "interested persons" based on their "familial ties to decedent and their desire to vindicate the rights of the decedent's estate." The probate laws do not contemplate the vindication of those kinds of rights; rather, their status as interested persons depends on whether Lotlikar or Ma had a property right or claim against Chin's estate that may be affected by the proceeding to reopen his estate.

Although Lotlikar and Ma primarily claimed a personal interest in vindicating the rights of Chin's estate, they suggest that they may actually have a financial interest as well. Appellants respond that any claimed financial interest is purely speculative. On the record before us, we agree with appellants.

As described above, Lotlikar and Ma were "heirs" of their brother's estate, because they would have been entitled to Chin's property under intestate succession if he had died intestate. ORS 111.005(18) ("'Heir' means any person, including the surviving spouse, who is entitled under intestate succession to the property of a decedent who died wholly or partially intestate."). And, until it was determined that their brother died testate—with a will that did not leave any property to Lotlikar or Ma—they were plainly interested persons, because those intestate property rights depended on the outcome of the proceedings to probate the will.

However, Lotlikar and Ma acknowledge that, because Chin's will was admitted to probate and the time to contest the will elapsed, they "are not currently positioned to receive any money from Mr. Chin's estate." They further concede that they "do not currently have plans to seek to invalidate Mr. Chin's will." However, they submit that there is a "reasonable likelihood that the new personal representative will find documents or other information that will justify setting Mr. Chin's will aside." The trial court made a similar observation, stating that "[i]t is possible that [Lotlikar and Ma] may have a financial interest in decedent's estate," but that it was "unable to make a more definite finding regarding financial interest because it is unclear whether [Lotlikar and Ma] will seek to have decedent's will set aside."

On this record, we fail to see how there is *any* likelihood that reopening the estate for an investigation into Price's alleged misconduct, all of which appears to have occurred over the last few years of Chin's life, between 2010 and 2012, would provide any basis for invalidating a will that was dated in 2003. As appellants correctly observe, the probate process would be eviscerated if statutory heirs were entitled to reopen final distributions based on mere speculation that grounds for invalidating a probated will could be uncovered. Because there is nothing in this record to suggest that respondents had a property interest or claim against Chin's estate that may be affected by the proceeding to reopen, the probate court should have dismissed their petition on that ground. We therefore reverse the limited judgment reopening the estate.

Reversed.