Argued July 25, affirmed in part; reversed in part December 26, 1978

In the Matter of the Estate of Richard M. Givens, Sr., Deceased.

REYNOLDS, *Appellant,*

*v.*

GIVENS, *Respondent.*

(No. 121-897, CA 8075)

588 P2d 113

Ivan J. Vesely, Portland, argued the cause for appellant. With him on the briefs was Robert Kovsky, Portland.

Terry Hannon, Portland, argued the cause for respondent. With him on the brief was Pattullo, Gleason, Scarborough, Trammell & Hannon, P.C., Portland.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

This is an appeal from the probate court's disposition of the personal representative's account. The objector, Mrs. Hewara O'Donnell Reynolds, contends the court erred in awarding any personal representative fees and attorney fees from the assets of the estate. She also contends the court erred in failing to surcharge the personal representative for waste of the estate's assets.

Mrs. Reynolds and decedent were both formerly United States government employees working in Europe. Decedent was divorced and had two children from his former marriage. Between 1956 and 1973 decedent and Mrs. Reynolds lived together in Europe as husband and wife, although they were not married.

In 1970, while in Paris, France, decedent executed a will. Mrs. Reynolds was designated in the will as personal representative of the estate. The will provided the personal representative was to pay $1,000 to each of decedent's two children and the remainder of the estate was to pass to Mrs. Reynolds.

In 1973 the couple both retired from U.S. government employment, returned from Europe and moved in with decedent's mother in a home she owned in Portland. On October 1, 1974, decedent and Mrs. Reynolds decided to marry. They consulted an attorney, Mr. Kretzmeier, and he assisted them in obtaining a Washington marriage license. Mr. Kretzmeier had in the past handled some legal matters for decedent's mother. The ceremony did not take place because the couple were late in arriving for the ritual.

At about this same time decedent's mother executed a deed conveying her house to decedent while reserving a life estate to herself. Mr. Kretzmeier prepared the deed. Decedent's mother made an oral gift to Mrs. Reynolds of the furniture and certain other personal property in the house.

[ 787 ]

On October 2, 1974, Mrs. Reynolds left for Paris to close the couple's apartment in that city. Because of a medical condition she was unable to travel by air. She journeyed to the East Coast by bus and then travelled to Europe by ocean liner. On October 12, 1974, decedent died and his mother passed away approximately four hours later on the same day. Mrs. Reynolds was notified of the deaths by cablegram while she was in transit, but she did not return to Portland until November 24, 1974.

On October 30, 1974, decedent's son, Richard M. Givens, Jr., was appointed personal representative of the estate of decedent's mother. Mr. Kretzmeier was attorney of record for Richard M. Givens, Jr., in his capacity as personal representative. The personal representative moved into the house and subsequently he and his sister removed most of the furniture and personal property from the residence. The estate was subsequently closed and the assets distributed to decedent's two children as the intestate heirs of his mother.

On November 25, 1974, immediately upon her return to Portland, Mrs. Reynolds went to Mr. Kretzmeier's office. She showed him decedent's will and asked him to represent her in settling the estate. Mr. Kretzmeier read the will and advised her that he represented Richard Givens, Jr., and because of the conflict she should consult other counsel. Four days later Richard Givens, Jr., filed a petition, prepared by Mr. Kretzmeier, seeking appointment as personal representative of decedent's estate. The petition alleged, *inter alia,* that decedent died intestate and that Mrs. Reynolds was his widow. Decedent's son was appointed personal representative of the estate on December 2, 1974.

On December 23, 1974, Mrs. Reynolds filed a petition to have Richard Givens, Jr., removed as personal representative, to have decedent's will admitted to probate and to have herself appointed as

personal representative. He filed a general denial to the petition.

The petition was not set for hearing and Richard Givens, Jr., continued as personal representative of the estate. On April 16, 1975, he filed an inventory showing the house valued at $15,000 as the only asset. On September 10, 1975, he filed an accounting and resigned as personal representative. The court, on its own motion, appointed an attorney as personal representative. The attorney resigned on March 11, 1976, and Mrs. Reynolds was appointed as personal representative. Decedent's will was admitted to probate.

In the accounting, Richard Givens, Jr., asked for costs and personal representative fees of $580 and attorney fees in the amount of $2,070. After hearing objections to the accounting the court allowed costs and $250 personal representative fees. The claimed fee was reduced on the ground the personal representative resigned before administration of the estate was complete. The court allowed $800 attorney fees. The claimed amount was reduced because the bulk of the legal work done related to protracted negotiation between the attorney for the personal representative and Mrs. Reynolds. The court awarded additional attorney fees of $2,307 for legal services incurred in defending the accounting against Mrs. Reynolds' objection.

Mrs. Reynolds' first contention is that Richard Givens, Jr., was appointed representative of his father's estate based on a false petition. As such he was an intermeddler and not entitled to costs, fees or attorney fees for administration of the estate.

The case of *In re Carlson's Estate,* 156 Or 597, 68 P2d 119 (1937), presented the Supreme Court with a similar controversy. In that case the decedent executed a will in Oregon and subsequently returned to his native Sweden, where he executed another will revoking the Oregon will. Following his death, a beneficiary under the Oregon will petitioned for appointment as

[ 789 ]

executor and for probate of the Oregon will, knowing it had been revoked by the subsequent Swedish will. The existence of the Swedish will was not disclosed to the probate court until a subsequent petition was filed by the beneficiaries under the Swedish will. The executor of the first will filed an accounting seeking, *inter alia,* expenses incurred in attempting to sustain the Oregon will, contending he acted in good faith. The Supreme Court sustained the probate court's order disallowing the claimed expenses, stating:

> "* * * The estate should not be charged for expenses incurred by the appellant [executor] in seeking to sustain a will which he did not honestly believe was the deceased's last.* * *" 156 Or at 605.

The court also noted, as a significant fact, that the executor, as a beneficiary named in the Oregon will, had a personal interest in attempting to sustain it.

In a later case the Supreme Court expressed the principle more strongly. *In re Estate of Felber,* 193 Or 231, 238 P2d 203, 31 ALR2d 231 (1951). The decedent was married for a number of years and although he separated from his wife they were never divorced. He then began living with another woman. Upon his death the other woman filed a petition seeking appointment as executrix alleging she was decedent's widow and only heir. She was aware decedent was not divorced and had a number of children. The true widow petitioned for removal of the executrix. The executrix subsequently resigned and filed an accounting seeking *inter alia* an administratrix fee and fee for her attorney. The Supreme Court, after reviewing a number of decisions from other jurisdictions as well as from Oregon, stated:

> "We shall review the authorities no further. We know of none which holds that a person who procures his appointment as administrator through the employment of perjured representations, for the sole purpose of serving his own designs, is entitled to compensation. * * *" 193 Or at 251.

[ 790 ]

The court denied any compensation for the executrix. Respecting the claim for attorney fees, the court stated that although the attorney employed by the executrix initially was unaware she was not the widow he persisted in pushing her claim after learning the truth. The court held his representation did not benefit the estate and denied assessment of attorney fees against the estate.

■ In the case at bar both Richard Givens, Jr., and his attorney were aware that decedent left a will. Four days after being apprised of the will's existence they hurriedly filed a petition alleging he died intestate. The attorney testified he reviewed the will and had "some doubt" as to its validity since it was executed in France. It is unnecessary to discuss the substance of his doubts. Even if an attorney and the proposed personal representative have doubts about the validity of the will there is no justification for failing to disclose to the court the existence of a purported will when it is known to them. The ultimate decision as to the validity of the will, is for the court, not the personal representative or his counsel. The interest of the estate is not served by failing to disclose a known will.

Much of the controversy and delay surrounding administration of this estate was precipitated by the petition alleging decedent died intestate and the subsequent appointment of Richard M. Givens, Jr., as representative. The estate is relatively small and uncomplicated. There was only one asset inventoried in the estate: a house valued at $15,000. The principal claim against the estate, other than for personal representative fees and attorney fees, was made by decedent's former wife for child support arrearages. That claim exceeded the value of the estate.

■ Richard M. Givens, Jr., had a personal interest in having the estate pass by intestate distribution. Under ORS 112.045 he would be entitled to share equally with his sister in the estate since decedent left no

widow. On the other hand if the estate was distributed according to the will he would receive only the specific gift of $1,000 from the net assets of the estate, if any.

We conclude that because Richard M. Givens, Jr., procured appointment as personal representative through employment of a misleading petition he is not entitled to any compensation. The attorney who represented him is likewise precluded from claiming attorney fees from the estate. The attorney actively participated in filing the misleading petition, knowing it was inaccurate, and in fostering the claim that the estate be distributed by intestate succession. The estate was not benefited by the action of either. We also conclude the attorney fees incurred to defend the accounting should be disallowed as an obligation of the estate. The expenses of defending administration of an estate not properly begun cannot be charged to the estate.

We, therefore, reverse that portion of the order which allowed $250 for personal representative fees, $800 for attorney fees incurred in administration of the estate and $2,307 attorney fees related to defense of the accounting. The allowance of other costs of administration of the estate is affirmed. These costs would have been necessary had Mrs. Reynolds been appointed as representative, and they benefited the estate.

■ Mrs. Reynolds challenges the accounting additionally on the grounds that Richard Givens, Jr., removed or permitted removal of personal property from the house which belonged to her as a result of an *inter vivos* gift from decedent's mother. These items of personal property either belonged to Mrs. Reynolds or were part of the estate of decedent's mother. In any event they are not part of decedent's estate and their disposition cannot be litigated in this estate proceeding. The court properly denied her objection.

■ She also contends Richard Givens, Jr., removed lamps attached to the wall of the house and the back

door. She argues these were part of the realty and should be returned to the estate or Richard Givens, Jr., be surcharged for their value. The court ordered return of the lamps removed from the house; thus they are not involved in this appeal. The door was removed and replaced as part of the repair of the house contracted for by decedent prior to his death. The evidence indicates the old door was damaged and could not be locked. It was discarded by the workmen who replaced the door and retrieved by decedent's daughter. There is no evidence as to the value of the door. Absent some evidence that it had value other than discarded debris from the home repair, we decline to surcharge the putative personal representative.

■ Mrs. Reynolds' final contention is that Richard M. Givens, Jr., damaged or allowed the house to be damaged. There was evidence the walls, bathroom fixtures and floors were damaged during the time Mr. Givens acted as personal representative of the estate. There, however, is no evidence as to the monetary amount of the damages. Mrs. Reynolds asks that we remand the case for determination of damages. She had the burden of proof respecting the monetary amount and the opportunity to meet that burden. We decline that invitation to further prolong administration of this estate by giving her a second chance to meet her burden.

The portion of the order allowing personal representative fees and attorney fees for administration of the estate and for defense of the accounting is reversed. The order allowing costs, and denying Mrs. Reynolds' other objections is affirmed.

Affirmed in part; reversed in part.