Argued and submitted August 27, accused reprimanded December 12, 1991

# In re Complaint as to the Conduct of

## · C. Thomas BOARDMAN,
*Accused.*

## (OSB 89-42; SC S37916)

822 P2d 709

Mary A. Cooper, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the briefs for the Oregon State Bar.

J. Bradford Shiley, Portland, argued the cause and filed the brief for the accused.

PER CURIAM

## PER CURIAM

This is a disciplinary proceeding initiated by the Oregon State Bar, charging the accused with violating two different disciplinary rules. The trial panel found him not guilty. The Bar seeks review of the trial panel's decision. We review *de novo*. ORS 9.536(3); BR 10.6. The Bar has the burden of establishing ethical misconduct by clear and convincing evidence. BR 5.2. We find the accused guilty of violating DR 1-102(A)(3) and DR 7-102(A)(5) and reprimand him.

### FACTS

On October 4, 1978, Leonard Winkler executed a will naming Howard R. Hedrick as the personal representative. That will provided that a marriage by Winkler would not revoke it. In August 1981, Winkler married Anne Winkler. Winkler thereafter executed a second will, revoking all previous wills and codicils. The second will was dated June 8, 1986, and named Anne Winkler as personal representative. Leonard Winkler died in June of 1987.

On or about December 8, 1987, Hedrick filed a petition in Multnomah County Circuit Court to admit the 1978 will to probate. On or about December 9, 1987, that will was admitted into probate, and Hedrick was appointed personal representative of the estate.

Sometime before December 9, 1987, Anne Winkler retained the accused for the purpose of probating the 1986 will. On January 15, 1988, the accused filed a petition for the probate of the 1986 will and for the appointment of Anne Winkler as personal representative.

It was made known to the probate court that there were two wills with two different personal representatives seeking to administer the same estate. With this knowledge, the probate judge would not immediately sign an order appointing Anne Winkler as personal representative.

The accused, being uncertain of his position in this matter, consulted Carol Kyle, a Portland lawyer who has expertise in the field of probate law. Kyle advised the accused that, upon the filing of the newer (1986) will, unless its validity were challenged, the court had no choice but to sign

an order admitting the newer will to probate and naming the personal representative as set forth in the newer will.

Davis was the lawyer for Mr. and Mrs. Rider, who owned real estate jointly with Leonard Winkler. The property had sold, but the transaction was not closed at the time of Winkler's death. The Riders needed to deal with the personal representative of the Winkler estate to finalize the sale and also to resolve certain other business matters between the Riders and Leonard Winkler. Davis spoke with the accused on or about February 17, 1988, to discuss the Riders' concerns. In that conversation, the accused informed Davis — incorrectly — that Anne Winkler was the personal representative of the Winkler estate. Davis asked the accused to arrange for Anne Winkler to sign certain documents in connection with the various real estate transactions. The accused agreed. The accused did not explain that Hedrick was currently the estate's personal representative, but that the accused was attempting to have him removed and to have Anne Winkler appointed.

Between February 18 and August or September of 1988, Davis periodically called the accused to inquire whether he, Davis, would receive the documents signed by Anne Winkler as personal representative. Never on any of those occasions did the accused suggest to Davis that Anne Winkler was not the personal representative, even though the accused knew that Davis was unaware of the ongoing dispute as to who the personal representative should be. The accused knew during his discussions with Davis from February through September of 1988 that, in the eyes of the probate court, Hedrick — not Anne Winkler — was the personal representative. The accused believed, however, that ultimately the court would agree that she was entitled to be personal representative.

The accused was becoming somewhat frustrated with the Multnomah County Probate Court, because he knew that his client could not act without an order appointing her as personal representative, but he was still of the opinion that she was the proper person to be appointed. The accused attempted to have hearings set. Those hearings were scheduled for as early as April 13, 1988. Because of continuances, the hearings were delayed. The matter dragged on through

the summer of 1988 to the exasperation of the accused and his client. The case ultimately came on for trial on November 7, 1988, and after three or four days of hearings, the parties negotiated a settlement on November 10, 1988, wherein Anne Winkler was named personal representative and the 1986 will was admitted to probate.

The trial panel found that the accused misrepresented Anne Winkler's status to Davis. The trial panel found that the accused's misrepresentations were not innocent ones. Despite those factual findings, however, and despite its observation that "the standards of professionalism in this community suggest that the [a]ccused should have been more candid with * * * Davis," the trial panel concluded that the accused was not guilty of violating DR 1-102(A)(3) and DR 7-102(A)(5), with which he was charged.

The Bar sought review in this court, asking that we find the accused guilty of violating DR 1-102(A)(3) and DR 7-102(A)(5) and impose the sanction of a reprimand. We agree with the Bar that the accused's acts constitute a violation of DR 1-102(A)(3) and DR 7-102(A)(5) and that a reprimand is the appropriate sanction.

## DISCIPLINARY RULE VIOLATIONS

DR 1-102(A)(3) provides: "It is professional misconduct for a lawyer to: * * * (3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation." DR 7-102(A)(5) provides: "In a lawyer's representation of a client * * *, a lawyer shall not: * * * (5) Knowingly make a false statement of law or fact."

In this case, the accused made misrepresentations because of his belief that Anne Winkler was legally entitled to be personal representative of her husband's estate. It does not appear that the accused intended any harm to Davis by the misrepresentation; he was merely telling Davis the facts as he himself believed that they *should* exist. Nevertheless, the accused made a knowing misrepresentation. The fact that the accused believed that his representations stated the legally correct position is immaterial. *See In re Boothe*, 303 Or 643, 740 P2d 785 (1987). The point is that the accused knew that he was misrepresenting the facts as they existed at the time. Neither does the fact that the accused did not intend

injury to any party preclude the finding of a disciplinary rule violation. As this court stated in *In re Hiller*, 298 Or 526, 533, 694 P2d 540 (1985), "the fact that [the accused lawyers] did not intend to deceive or commit a fraud does not acquit them of misrepresentation." Moreover, a lawyer's failure to correct a false impression made by an unintentional misstatement is also a misrepresentation. *In re Hubert*, 265 Or 27, 507 P2d 1141 (1973); *In re Hiller, supra.*

■   At the time the accused represented to Davis that Anne Winkler was the personal representative of the Winkler estate, the probate court already had refused to remove Hedrick as personal representative despite the accused's requests that it do so. The accused's failure to apprise Davis of this fact constituted a nondisclosure of a material fact. The accused's continuing failure to correct Davis' known erroneous impression that Anne Winkler was the personal representative was also a misrepresentation in violation of DR 1-102(A)(3) and DR 7-102(A)(5).

## SANCTION

We have found the accused guilty of violating DR 1-102(A)(3) and DR 7-102(A)(5). We turn now to the task of deciding what sanction his actions warrant. We refer to the American Bar Association Standards for Imposing Lawyer Sanctions (1986) (ABA Standard(s)) for guidance. *See In re White*, 311 Or 573, 591-93, 815 P2d 1257 (1991) (looking to ABA Standards for assistance); *In re Benson*, 311 Or 473, 479-81, 814 P2d 507 (1991) (same).

ABA Standard 3.0 sets out four factors to be considered generally in imposing sanctions:

(1)   The duty violated;

(2)   The lawyer's mental state (intentional, knowing, or negligent);

(3)   The potential or actual injury resulting from the lawyer's misconduct; and

(4)   The existence of aggravating or mitigating factors.

By misrepresenting the facts regarding the identity of the personal representative, the accused violated a duty

owed to the public to behave honestly and with integrity. *See* ABA Standard 5.0. The accused consciously was aware of the nature and attendant circumstances of his conduct, but he apparently had no conscious objective or purpose to accomplish a particular result. *See.* ABA Standards at 7 (defining knowledge).

The Bar does not assert or offer any evidence of actual injury to Davis' clients or any other party as a result of the accused's actions. The injury need not, however, be actual, only potential. ABA Standard 3.0(a). In this case, there was the potential that Davis' clients, the Riders, would be prejudiced by a delay in closing the sale.

We find no aggravating factors. Mitigating factors include the absence of a prior disciplinary record, ABA Standard 9.32(a), and absence of a dishonest or selfish motive, ABA Standard 9.32(b).

ABA Standard 5.13 suggests that reprimand is appropriate in this type of situation. Prior decisions of this court are consistent with that standard. In *In re Hubert,* *supra,* this court reprimanded a lawyer for having failed to correct an inadvertent misrepresentation to the court after the incorrectness of his statement had been brought to his attention. In *In re Miller,* 287 Or 621, 601 P2d 789 (1979), the lawyer was reprimanded for failing to advise persons depositing bail that the bail would be returned to the lawyer's clients and not to the people depositing bail, and for further failing to advise these persons that his fee would be payable only from bail money deposited. In *In re Sims,* 284 Or 37, 584 P2d 766 (1976), the lawyer was reprimanded for signing a client's name and then notarizing the client's signature, even though the lawyer believed that he had authority to sign his client's name to the verification and that he was acting in the best interests of his client.

The reprimand recommended by the Bar is the appropriate sanction. This opinion shall serve as a reprimand. The Oregon State Bar is awarded its actual and necessary costs and disbursements under ORS 9.536(4).