No. 14　　　　March 12, 2026　　　　43

IN THE SUPREME COURT OF THE
STATE OF OREGON

In re Complaint as to the Conduct of

ISAAC ERSOFF
OSB No. 952600,
*Respondent.*

(OSB 23111) (SC S071643)

En Banc

On review of the decision of a trial panel of the Disciplinary Board.*

Argued and submitted September 25, 2025.

Theodore William Reuter, Reuter Corbett, LLP, Hillsboro, argued the cause and filed the brief for respondent.

Alison Wilkinson, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the briefs on behalf of the Oregon State Bar.

PER CURIAM

The complaint is dismissed.

_____

* Trial panel opinion dated December 5, 2024.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar charged respondent with violating several Rules of Professional Conduct (RPC) when he filed a probate petition that alleged a decedent had "died intestate" but did not state that the decedent had executed a possibly valid will—one that respondent was contesting in another case pending in the same circuit court. The Bar alleged that respondent's conduct violated RPC 3.3(a)(1) (knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement); RPC 3.3(a)(4) (knowingly concealing or failing to disclose to a tribunal that which the lawyer is required by law to reveal); and RPC 8.4(a)(4) (engaging in conduct prejudicial to the administration of justice).

A trial panel of the Disciplinary Board determined that the Bar had failed to prove those allegations. The trial panel emphasized that probate law defines "intestate" as referring to a person "who dies without leaving a *valid* will," ORS 111.005(20) (emphasis added), and it found that respondent believed he was asserting a plausible legal position when he represented that decedent had "died intestate." The trial panel also was persuaded that respondent satisfied his obligation to disclose the existence of the contested will by filing a challenge to that will in the same court. The Bar sought review of the trial panel's decision. Reviewing the record *de novo*, *see* Bar Rule of Procedure (BR) 10.6, we conclude that the Bar failed to prove any of the alleged violations by clear and convincing evidence.

We agree with the trial panel that the Bar failed to prove that respondent made a false statement when he asserted that decedent "died intestate," because the term "intestate" refers to the legal status of having died without a *valid* will and the validity of the 2017 will was an open question that respondent was actively contesting in the same circuit court. We conclude, however, that respondent's statement that decedent "died intestate" was potentially misleading and that respondent was legally obligated to disclose—to the judge considering the probate petition—the information that decedent had died with a will that respondent was challenging. But—under the particular

circumstances of this case—we are not persuaded that respondent *knew* that his filing of the pending challenge to the will in the same circuit court probate department was insufficient to put that information before the judge who would be considering the petition to open the intestate estate. Accordingly, we conclude that the Bar failed to prove that respondent knowingly failed to satisfy his disclosure obligation, as required to establish a violation of RPC 3.3(a)(1) or RPC 3.3(a)(4). We also conclude that the Bar failed to prove that respondent violated RPC 8.4(a)(4), because the Bar has not persuaded us—again under the circumstances of this particular case—that respondent's lack of disclosure had the potential to cause substantial prejudice to the administration of justice, as required for a single incident of improper conduct.

## I.  BACKGROUND

The following facts are undisputed. Respondent was admitted to the Oregon State Bar in 1995, but he was on inactive status between 1999 and 2012. Beginning in 2012, respondent initially handled a variety of civil matters but eventually focused his work on estate planning.

Respondent agreed to represent an individual, Montre, in litigation regarding the validity of estate documents executed by Montre's recently deceased mother (decedent). Montre had been named executor of decedent's estate in a will prepared in 2017. The will directed all of decedent's assets to a trust, of which Montre initially was the trustee and primary beneficiary. Montre was decedent's sole surviving child. Her other son had predeceased her and the will expressly disinherited that son's children.

In early 2020, decedent had moved to Oregon to live with her granddaughter, Arguelles, who was a child of her deceased son and Montre's niece. Around that time, decedent had executed a restatement of her trust (2020 trust restatement), which named Arguelles as trustee upon decedent's death. The 2020 trust restatement also expressed decedent's intent to buy a house in Oregon and, upon decedent's death, to leave the house to Arguelles. Decedent then had purchased a home in McMinnville, through a deed listing the trustee of

decedent's trust as owner of the property. This house was decedent's only asset for probate at the time of her death.

Montre told respondent that decedent had been diagnosed with dementia in 2016, and he shared other information that led respondent to believe that decedent's restatement of her trust in 2020 had been the product of undue influence and that, even when decedent originally created the trust and executed the 2017 will, she had likely lacked capacity to create a valid trust or will due to the dementia.

Respondent prepared a single pleading to be filed in Yamhill County Circuit Court that combined the following: a petition to contest the 2020 trust restatement; a petition to contest the 2017 will and original trust creation; and a petition to open administration of decedent's estate as an "intestate estate" and appoint Montre as personal representative. Respondent testified that he wanted to open a probate for decedent's estate because, if the judge determined that the trust was not validly created, "the assets, if any, had to go somewhere"; he expected, however, that the probate case "was just going to sit there" until the validity of the trust was resolved, because all of decedent's assets were currently held by the trust.[1] Respondent also testified that he decided to petition for administration of an "intestate" estate, rather than to probate the 2017 will, because the former course of action was consistent with his position in the litigation that the will was not valid, and because Montre was the designated personal representative either way.

But respondent ultimately did not file the combined pleading, because respondent's assistant advised him that the court had instructed her to file the estate administration petition as a separate case. Therefore, respondent created and filed two separate pleadings. First, he filed a petition that challenged the 2020 trust restatement as the product of undue influence and lack of testamentary capacity and,

---

[1] All of the estate assets were held in trust, so there would be no assets to probate unless respondent prevailed in the trust contest matter and the trust was determined to be invalid. Respondent's challenge to decedent's trust included his challenge that her 2020 trust restatement was the product of undue influence and lack of testamentary capacity and his alternative challenge that she lacked capacity to create a valid trust in 2017.

alternatively, challenged the 2017 will and original trust creation as invalid for lack of testamentary capacity ("the trust-and-will-contest case"). The next day he filed the petition for administration of an "intestate estate" and appointment of Montre as personal representative ("the probate case").[2] Both pleadings were captioned as filed in the "probate department" of the Yamhill County Circuit Court but were assigned different case numbers and did not cross-reference each other. Respondent attached the 2017 will to the petition that he filed in the trust-and-will-contest case, but he did not attach or include any mention of the 2017 will or his challenge to it in the probate case.

Judge Collins was promptly assigned to the probate case, and he signed a limited judgment that opened administration of the "intestate" estate and appointed Montre as the personal representative. He later was briefly assigned to the trust-and-will-contest case, but he did not recall if he was aware of that case at the time that he signed the limited judgment in the probate case.

The first week of February 2021, respondent spoke with Arguelles's attorney, Hamilton, to convey an offer of settlement in the trust-and-will-contest case. In addition to discussing settlement, the parties discussed respondent's allegations in the probate case. That discussion features prominently in the Bar's argument that respondent knew he needed to disclose the will in the probate case, but the evidence of what was said is conflicting.

Hamilton testified that, during the conversation, he told respondent that he had fortuitously learned of the probate case and that he did not think respondent should have filed a petition to administer an "intestate" estate, especially without mentioning the existence of a potentially valid will. Hamilton believed that respondent had agreed to file an amended intestate petition disclosing the will. Respondent testified, however, that he had simply agreed to send the probate judge a letter to make sure that the judge

---

[2] In challenging the original trust document as an alternative to the challenge to the 2020 trust restatement, respondent appears to have assumed that a favorable ruling on either challenge would result in the trust assets being released to pass through probate as assets of the estate. Whether respondent was correct about that point is beyond the scope of the case before us.

was aware of the related case involving the validity of the will. According to respondent, Hamilton "in no way conveyed" any concern about that approach, and he was waiting to hear back about the settlement offer before writing to the judge. Respondent's contemporaneous notes and an email that he sent to his client later that same day reflect that he made the settlement offer and that the parties discussed their respective positions as to the trust-and-will-contest case, but they do not mention the probate case at all or include a timeline for bringing the will challenge to the attention of Judge Collins, who continued to handle the probate case.

When several weeks had passed without respondent's firm filing an amended probate petition or other communication to disclose the challenged will in the probate case, Hamilton complained to the Bar about respondent.[3] When respondent learned of Hamilton's complaint to the Bar, his firm promptly filed a notice with the court that respondent's law partner, Zantello, was substituting as Montre's counsel in the probate case. Respondent testified that he had told Zantello about his plan to submit a letter explaining the existence of the challenged will but that Zantello preferred to put that information in an amended probate petition, which he filed at the end of March.

Respondent had learned of Hamilton's complaint through an email from an attorney in the Bar's Client Assistance Office, who explained that his role was to determine whether there was sufficient basis to refer the complaint to Bar Disciplinary Counsel. In an immediate response to that email, respondent explained: "Perhaps my understanding is incorrect, but my thinking was that the probate case would be put on hold until the outcome of the other case—that is, the contest of the Will and Trusts. Therefore, I submitted the petition for probate as would be appropriate in the event that my client prevails on the contest case." Respondent represented that he had told

---

[3] Hamilton testified that he had initially called the ethics hotline at the Bar for advice and been told that he was obligated to file a complaint against respondent. Respondent pointed to testimony from a Bar counsel who had worked on the ethics hotline that it would be "unusual" to tell an attorney what they "must do" during a discussion on the ethics hotline.

Hamilton he would send the court a letter to explain the existence of the challenged will and "that the outcome of the separate adjudication would determine whether or not the decedent died intestate." In addition, he stated in the email that he believed his approach was "appropriate" and that he "did not intend to mislead the court or withhold information from the court." Nevertheless, respondent indicated that he was "more than willing" to take the approach preferred by Hamilton if the Bar's attorney thought that respondent's approach had been incorrect.

A few other facts are pertinent. In an objection to the amended probate petition, Hamilton alleged that decedent had executed a new will in 2020 that assigned all her assets to the restated trust but named Arguelles as personal representative. Therefore, Hamilton argued, Montre should be removed as personal representative and Arguelles appointed instead.[4] Zantello responded to that objection by proposing that the "intestate" probate case should be converted to a probate of the 2017 will—because he contended that the 2020 will was the product of undue influence—and that the court should retain Montre as personal representative pursuant to the direction in the 2017 will. Judge Collins entered a new limited judgment, admitting the 2017 will to probate and again appointing Montre as personal representative of decedent's estate. Ultimately, the court consolidated the two cases, Montre withdrew his challenge to decedent's testamentary capacity in 2017, and the remaining issue of undue influence over decedent's 2020 estate documents was resolved in favor of Arguelles, although the judge's opinion described that as a "difficult decision."

The Bar filed a formal complaint against respondent alleging that respondent's conduct violated three different Oregon Rules of Professional Conduct: RPC 3.3(a)(1), which prohibits knowingly making or failing to correct "a

---

[4] The trial panel expressly found that respondent was not aware of the 2020 will during the time frame at issue. The Bar does not here challenge that finding, and we agree with it, because respondent's actions in challenging the 2017 will and 2020 trust restatement suggest that he would have added a challenge to the 2020 will if he were aware of it. Thus, except as specifically indicated in this opinion, the existence of the 2020 will is not pertinent to our analysis of the charges against respondent.

false statement of fact or law" made "to a tribunal"; RPC 3.3(a)(4), which prohibits knowingly failing "to disclose to a tribunal that which the lawyer is required by law to reveal"; and RPC 8.4(a)(4), which prohibits "conduct that is prejudicial to the administration of justice." The trial panel unanimously concluded that the Bar had failed to prove any of the alleged violations and dismissed the charges, and the Bar has sought review of that decision.

## II.  ANALYSIS

Before this court, the Bar challenges the trial panel's findings and conclusions, contending that respondent committed all the alleged rule violations and should receive, as a sanction, a 60-day suspension from the practice of law. The Bar's arguments focus our analysis on three discrete inquiries: First, whether respondent knowingly made a false statement of fact or law in violation of RPC 3.3(a)(1) when he filed a petition for "intestate" administration despite knowing that decedent had executed a will in 2017; second, whether respondent knowingly misrepresented or failed to disclose a material fact when he failed to at least clarify the assertion that decedent "died intestate" by disclosing—in the probate case—the challenged will, in violation of both RPC 3.3(a)(1) and RPC 3.3(a)(4); and finally, whether those acts and omissions—even if not knowingly misleading or knowingly contrary to respondent's disclosure obligation—resulted in substantial actual or potential prejudice to the administration of justice, in violation of RPC 8.4(a)(4).

In lawyer disciplinary proceedings, the Bar must prove each violation by "clear and convincing evidence"—meaning that "the truth of facts asserted is highly probable." BR 5.2; *In re Nisley*, 365 Or 793, 801, 453 P3d 529 (2019) (internal quotation omitted). Reviewing the record *de novo*, *see* BR 10.6, we conclude that the Bar failed to prove by clear and convincing evidence that respondent acted "knowingly," as required for violations of RPC 3.3(a)(1) and RPC 3.3(a)(4). We also conclude that the Bar failed to prove that respondent's conduct was prejudicial to the administration of justice, as required for a violation of RPC 8.4(a)(4).

A.   *Whether the Bar Proved that Respondent's Representation that Decedent Died Intestate Violated RPC 3.3(a)(1)*

We begin with the Bar's allegation that respondent violated RPC 3.3(a)(1) by filing a petition that asserted decedent had "died intestate." That rule provides that "[a] lawyer shall not knowingly * * * make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]" RPC 3.3(a)(1). The Bar maintains that respondent knew that decedent had executed a "facially valid will" in 2017 (as established by his challenge to that will in the trust-and-will-contest case), and therefore, respondent knew that filing a petition to administer an "intestate" estate falsely represented that decedent had died without a will. Respondent, for his part, does not dispute that he knew about the 2017 will when he filed the petition to administer an "intestate" estate. But he asserts that whether decedent died intestate is a legal conclusion that depended on whether she had a *valid* will. *See* ORS 111.005(20) (defining "intestate" as meaning "one who dies without leaving a valid will"); *see also Black's Law Dictionary* 984 (11th ed 2019) ("intestate" means "[o]f, relating to, or involving a person who has died without a valid will"). And he asserts that he took a plausible legal position in contending that decedent died intestate, given the pending challenge to the validity of the will, and therefore did not knowingly make a false statement.[5]

The trial panel agreed with respondent that "intestate" refers to dying without leaving a *valid* will and, thus, that respondent was pleading a plausible legal theory—not making a knowingly false statement—when he represented that decedent had "died intestate." Moreover, because the allegation that decedent "died intestate" was not false, the trial panel reasoned that RPC 3.3(a)(1) imposed no obligation on respondent to correct that statement.

---

[5] The Bar emphasizes that dementia does not preclude a person from possessing testamentary capacity and criticizes respondent for relying entirely on what he learned from Montre about decedent's testamentary capacity in 2017. But that argument goes to the merits of respondent's legal position in the trust-and-will-contest case, which is not before us, and not whether respondent knew that decedent's 2017 will was valid.

On *de novo* review, we conclude that the Bar did not prove by clear and convincing evidence that respondent knowingly made a false statement to the court when he filed a probate petition stating that decedent had "died intestate," because the statement describes respondent's good faith legal position that decedent died without a valid will. As our disciplinary cases illustrate, there is an important distinction between a false statement of fact or law and a good faith assertion of a legal position on an open question. For an example of the former, the lawyer in the case of *In re Boardman*, 312 Or 452, 822 P2d 709 (1991), had represented that his client was the personal representative of an estate despite knowing that another person had been appointed personal representative and that the probate court had refused to remove that other person as personal representative. *Id.* at 454-55. We rejected as "immaterial" the attorney's belief that his client was legally entitled to be the personal representative, because the attorney "knew that he was misrepresenting the facts as they existed at the time." *Id.* at 456.

We reached a similar conclusion in *In re Paulson*, 346 Or 676, 216 P3d 859 (2009), *adh'd to as modified on recons*, 347 Or 529 (2010), in which we held that a lawyer had violated RPC 3.3(a)(1) when he supported motions to postpone trials or hearings in pending matters with a declaration representing that his six-month disciplinary suspension was "on appeal," because, as of the date of those representations, this court had already issued its decision imposing the suspension and denied a petition for reconsideration, and the appellate judgment had issued. *Id.* at 697-98. We acknowledged that the lawyer had apparently intended to seek discretionary review by the United States Supreme Court, but we emphasized that the representation that the suspension was "on appeal" was "patently not true," because, on the date of that representation, the suspension had become effective and "no appellate proceeding was pending." *Id.*

We reached a different conclusion, however, when a lawyer asserted a plausible position regarding a legal conclusion that remained an open question. In *In re Marandas*,

351 Or 521, 270 P3d 231 (2012), the lawyer repeatedly had stated that a confidentiality provision in a settlement agreement prohibited him from disclosing the terms of the agreement. *Id.* at 530. The trial panel interpreted the agreement as not binding the lawyer to confidentiality and, thus, concluded that the lawyer's statements were knowingly false representations. *Id*. But this court disagreed with that approach. Without deciding whether the trial panel's interpretation of the agreement was correct, this court held that the lawyer had not made a knowingly false statement of law, because he had a plausible legal argument in support of his assertion about an open question. *Id*. at 533.

Here, the Bar acknowledges that whether decedent died intestate is a legal conclusion that depends on whether she died with a valid will. And, although Zantello later withdrew Montre's challenge to the validity of the 2017 will and accordingly amended the probate petition, the will's validity was an open question and the subject of active litigation in the same circuit court until then. As in *Marandas*, we conclude that respondent had a plausible legal argument that decedent died without a valid will and, therefore, "died intestate."[6] Because that legal question had yet to be resolved, the Bar has not persuaded us that respondent knowingly made a false statement in asserting that decedent "died intestate" when he filed the petition to administer her estate. Moreover, the Bar has not proven that respondent knowingly failed to correct that purportedly false statement. As indicated above, whether decedent died with a valid will or intestate remained an open question, subject to the pending litigation, at least until Zantello withdrew that challenge. And he did so by simultaneously amending the probate petition to no longer allege that decedent "died intestate." Accordingly, the Bar failed to prove that respondent violated RPC 3.3(a)(1) by alleging that decedent "died intestate." But that does not end the inquiry.

---

[6] We note that our decision turns on the fact that the allegedly false representation was that the decedent "died intestate," an open legal proposition; had respondent had affirmatively stated that decedent died without a will, that would be a false statement of fact.

B. *Whether the Bar Proved that Respondent's Failure to Disclose the 2017 Will in the Probate Case Violated RPC 3.3(a)(1) or RPC 3.3(a)(4)*

The Bar also contends that even if the representation that decedent "died intestate" was not, itself, a knowingly false statement, respondent's failure to disclose the 2017 will when he filed the intestate petition created a false impression that amounted to a false statement that respondent was legally obligated to correct. His failure to do so, the Bar alleges, violated both RPC 3.3(a)(1) and RPC 3.3(a)(4). The Bar is correct that respondent's failure to disclose the 2017 will in the probate matter raises different concerns under the disciplinary rules than his statement that decedent "died intestate." But we ultimately conclude that the Bar failed to prove that respondent's failure to disclose the will amounted to a violation of either RPC 3.3(a)(1) or RPC 3.3(a)(4).

As set out above, a lawyer violates RPC 3.3(a)(1) by knowingly making, or failing to correct, "a false statement of law or fact" made "to a tribunal." A material omission can make a statement false for purposes of RPC 3.3(a)(1). *See In re Kluge*, 335 Or 326, 340, 66 P3d 492 (2003) (emphasizing, under former disciplinary rules, that a misrepresentation can be "either an affirmative misstatement or an omission"); *In re Greene*, 290 Or 291, 298, 620 P2d 1379 (1980) (also under former disciplinary rules, observing that "[a] half-truth or silence can be as much a misrepresentation as a lie"). In addition, RPC 3.3(a)(4) states that a "lawyer shall not knowingly *** conceal or fail to disclose to a tribunal that which the lawyer is required by law to reveal[.]"

The Bar contends that the allegation that decedent "died intestate" could readily be understood as an allegation that she died without *any* will and, thus, that the existence of a will that respondent *contended* was invalid was a material fact that respondent was required by controlling law to reveal to the judge evaluating the probate petition. We agree. The Bar relies on the Court of Appeals' statement in *Reynolds v. Givens*, 37 Or App 785, 791, 588 P2d 113 (1978), an attorney fee case, that, "[e]ven if an attorney and the proposed personal representative [had] doubts about the validity

of the will[,] there is no justification for failing to disclose to the court the existence of a purported will when it is known to them." The attorney in *Reynolds* had filed a petition stating that the decedent died "intestate" immediately after he learned that the decedent had executed a will leaving the bulk of his estate to a different beneficiary, whose lawyer was planning to file a petition to probate the will. The attorney's only explanation for not disclosing the will was that he had "some doubt" as to its validity, but he had taken no action to challenge the will. *Id*. at 788, 791-92. Although there are some differences between *Reynolds* and this case,[7] the rule it announces is consistent with the obligation reflected in the statute governing the contents of a probate petition. *See* ORS 113.035(2), (10) (requiring a petition to appoint a personal representative to include, "so far as known," information including "[w]hether the decedent died testate or intestate" and "[w]hether the original of the last will of the decedent is in the possession of the court or accompanies the petition").

It is also consistent with the obligation described in both this court's case law and the Rules of Professional Conduct to make full disclosure of material facts when presenting a request to a judge *ex parte*. *See* RPC 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse"); *Greene*, 290 Or at 298 (stating that "[t]he necessity for complete candor when dealing with the court, particularly in an *ex parte* context, cannot be overemphasized"); *see also* American Bar Association's Model Rules of Professional Conduct, Rule 3.3 comment [14] (commenting that, "in any ex parte proceeding, *** there is no balance of presentation by opposing advocates" but that the object is "nevertheless to yield a substantially just result"; thus, the lawyer for the represented party has a "duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision"); UTCR 3.130 (specifying that, "[w]hen a party

---

[7] For instance, *Reynolds* concerned whether the lawyer could obtain attorney fees from the estate and, significantly, the attorney in *Reynolds* had not filed a separate petition challenging the will; he simply failed to disclose it altogether. 37 Or App at 787-89.

seeks to obtain an order from a judge, the party must inform that judge of any ruling, hearing or application for a ruling or hearing before any other judge that concerns the subject of the order requested").[8]

We pause briefly to address the trial panel's conclusion that respondent complied with his disclosure obligation by filing the trust-and-will-contest case in the same circuit court. The trial panel observed that "[t]ribunal," as used in the rules, "denotes a court," RPC 1.0(p), and, therefore, that disclosing the will in a contemporaneous case also filed in the Yamhill County Circuit Court satisfied his obligation of disclosure to the "tribunal." The Bar insists that the trial panel's approach to what constitutes the "tribunal" is incorrect and undermines the "duty of candor" that RPC 3.3 as a whole is intended to promote. We agree with the Bar that the relevant "tribunal" that respondent needed to inform was the judge assigned to handle the probate case.

We have not previously addressed this specific question, and the full definition of "tribunal," as used in the rules, can include the particular decision-maker that the lawyer is appearing before:

> "'Tribunal' denotes a court, an arbitrator in a binding arbitration proceeding or a legislative body, administrative agency or other body acting in an adjudicative capacity. A legislative body, administrative agency or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter."

RPC 1.0(p). Our use of the term "court" in some contexts refers to the collection of judges and staff who make up a particular circuit or appellate court, but in other contexts refers to the individual judge or judges who have made a decision. *See Doe v. Corp. of Presiding Bishop*, 352 Or 77, 89-90, 280 P3d 377 (2012) (observing that "a court is a place where justice is judicially administered," and adding that

---

[8] Respondent contends that the Bar cannot rely on UTCR 3.130 to support its claim that respondent violated his disclosure obligation under RPC 3.3(a)(4), because the Bar did not plead or point to that provision below. But we cite the provision for its relevance to the issue, not because we accept the Bar's reliance on it to prove a violation.

"judges alone, are also called the court"). The definition's focus on the body that is "acting in an adjudicative capacity" and "render[ing] a binding legal judgment" suggests that "tribunal," likewise can refer to the judge who is making a decision. And we have previously emphasized the importance of disclosing material information to the judge making the decision. *In re Barnes*, 281 Or 375, 379-80, 574 P2d 657 (1978) (concluding that prosecutor violated duty of candor when he sought a warrant to draw blood from defendant in a pending case without disclosing to the judge from whom he sought the warrant that a defense challenge to the blood draw was pending before another judge).

Moreover, in the context of duties of candor more generally, a current Oregon statute and court rule reflect that focus on disclosure to the specific decision-maker. *See* ORS 9.460(2) (requiring that attorneys employ "such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact"); UTCR 3.130 (requiring that, "[w]hen a party seeks to obtain an order from a judge, the party must inform *that judge* of any ruling, hearing or application for a ruling or hearing before any other judge that concerns the subject of the order requested" (emphasis added)). Thus, we agree with the Bar that respondent was obligated to disclose the existence of the 2017 will when filing the petition to open administration of an "intestate" estate and that he did not satisfy that obligation by filing a challenge to the will in the same circuit court.

But both RPC 3.3(a)(1) and RPC 3.3(a)(4) require an element of knowledge. *See* RPC 3.3(a)(1) (prohibiting lawyers from "knowingly" making or failing to correct a false statement to a "tribunal"); RPC 3.3(a)(4) (prohibiting lawyers from "knowingly" failing to disclose a fact to a tribunal). In other words, we have explained that a lawyer has a duty to disclose material information and that the existence of a potentially valid will is material when a lawyer seeks to open an "intestate" estate, even if the lawyer is simultaneously contesting the validity of that will. But to prove that respondent violated RPC 3.3(a)(1) or RPC 3.3(a)(4), the Bar must prove by clear and convincing evidence that

respondent knowingly withheld the existence of the challenged will from the probate judge. *See Kluge*, 335 Or at 340 (explaining that an omission can constitute a misrepresentation if it is "knowing, false, and material"). Thus, a knowing violation of the disclosure obligations presumes that the lawyer understood that the judge needed to be informed of specific additional information before ruling on an issue.

We have explained that "knowledge" does not require an attorney's subjective awareness that they are violating a rule of professional conduct. *In re Conry*, 368 Or 349, 373, 491 P3d 42 (2021). Knowledge, however, does require that the respondent be aware of the relevant facts and circumstances giving rise to the violation. *Id*. (a "knowing" mental state means the lawyer "must know the essential facts that give rise to the violation," whereas "[n]egligence involves the absence of subjective knowledge of facts, under circumstances in which the attorney *should* have known something." (emphasis added; internal quotation marks omitted)). Under the particular circumstances of this case, we are not persuaded that the Bar met its burden to prove that respondent knew that he was misrepresenting the status of decedent's estate or knew that he needed to do more to disclose the existence of the challenged will to the judge who would be considering the petition to open the intestate estate.

That conclusion is significantly informed by the fact that, one day before filing the probate petition, respondent had filed the trust-and-will-contest case in the same circuit court. In that filing, he had highlighted the potentially valid will, his challenge to that will, and his reasons for asserting that the will was not valid. In other words, everything that we have said an attorney must disclose when filing a petition to open an "intestate" estate was disclosed in a pleading also captioned as filed with the "probate department" of the Yamhill County Circuit Court. Although respondent did not claim that he had any particular expectation that the same judge would be assigned to both cases, we are not persuaded that respondent knew all of the facts that were pertinent to his duty to disclose the will—namely, that the judge to whom the probate petition would be assigned would be unaware of

the existence of the potentially valid will that respondent was challenging in the related trust-and-will-contest case.

Our conclusion also is significantly informed by respondent's plausible explanation that he viewed the cases as interdependent. Respondent explained, both immediately to the Bar's client assistance attorney and later in his testimony, that he filed the probate case only so that an estate would be open as a place for the assets to go if the trust-and-will-contest case established that the trust and its restatement were invalid. He further explained that he had intended and understood that the probate case would simply "sit there" until the validity of the trust and will were resolved in the other case. That explanation is persuasive given the evidence that decedent's 2017 will directed all of her assets to the trust; that respondent was actively challenging decedent's trust; that the validity of the will would not affect the personal representative appointment, because the will also designated Montre as personal representative; and that respondent had taken no action in the probate case beyond filing the petition to open administration of the estate.[9] Indeed, it is undisputed that respondent initially planned to file a single pleading that both requested to open an "intestate" estate administration and challenged decedent's 2017 will and trust and 2020 trust restatement as invalid. And, when the clerk's office directed respondent to file the matters under separate case numbers, he filed the case highlighting the existence of the challenged will first. Those are not the actions of a lawyer who had any interest in concealing the existence of the possibly valid will, and we are not persuaded by the Bar's contention that respondent was aware that he needed to do more to make the judge who would rule on the probate petition aware of the existence of a challenged will.

It may be that respondent *should have known* that there was a risk the judge handling the probate petition would be unaware of the existing challenged will, but RPC

_____

[9] Although not applicable here, certain statutes (ORS 114.441 to 114.462) contemplate the opening of a "no assets" probate case solely for the purpose of pursuing a personal injury or wrongful death claim. The no-assets probate procedure can be used to open an estate for the purpose of appointing a personal representative for a decedent in order to prosecute a wrongful death or other personal injury claim and to receive the proceeds of any recovery or may be summarily closed if no recovery is made.

3.3(a)(1) and RPC 3.3(a)(4) require the Bar to prove that a lawyer knowingly withheld information that the judge needed to be aware of. Under the particular circumstances of this case, given the interconnection between the trust-and-will-contest case and the probate case, the Bar has failed to prove that respondent—who had disclosed the will in the related case and believed that the probate case would be on hold until the challenges in the related case were resolved—*knew* that he was failing to disclose the existence of the challenged will as required.[10]

The Bar also contends that respondent knew he had created a false impression (that he was obligated to correct) at least by the time Hamilton discussed his concern about the "intestate" filing. But the testimony regarding what occurred during that conversation with Hamilton is conflicting, and respondent's contemporary notes do not indicate that he knew after that conversation that he needed to do anything at that time. Rather, respondent's immediate response upon learning of Hamilton's complaint to the Bar suggests that he was not aware that he had made a false statement or omitted information that he was required to disclose at that stage of the probate case. Although respondent conceded that he had agreed to address Hamilton's concerns by sending the court a letter explaining that a challenged will existed and that the separate pending challenge to the will's validity would ultimately determine whether decedent died intestate, respondent continued to insist that he believed his approach was "appropriate" and that he "did not intend to mislead the court or withhold information from the court." The Bar has not persuaded us by clear and convincing evidence that respondent misrepresented his state of mind following the conversation with Hamilton. Under the circumstances, the Bar has not proven that respondent knew that his failure to attach the challenged 2017 will or otherwise describe it in the probate petition would amount to a failure to disclose the existence of the will as required by the rules. Thus, the Bar has not proven that respondent

---

[10] We do not suggest that lawyers are excused from knowing of their obligation to disclose material facts to the tribunal, but to knowingly violate that obligation, the lawyer must know that, under the circumstances, they have failed to accomplish the required disclosure. This opinion resolves any ambiguity that might previously have existed regarding that point.

knowingly made or failed to correct a false statement in violation of RPC 3.3(a)(1), nor that he knowingly failed to disclose the will to the tribunal in violation of RPC 3.3(a)(4).

## C.  *Whether the Bar Proved that Respondent's Conduct Was Prejudicial to the Administration of Justice*

The Bar's final contention is that, even if it failed to prove the other charged violations, it proved that respondent's conduct as a whole violated RPC 8.4(a)(4). The rule provides that "[i]t is professional misconduct for a lawyer to *** engage in conduct that is prejudicial to the administration of justice." Unlike the rules discussed above, RPC 8.4 (a)(4) does not require that a lawyer act with any particular mental state. *See In re Claussen*, 322 Or 466, 482, 909 P2d 862 (1996) (explaining that under *former* DR 1-102 (A)(4), the predecessor to RPC 8.4(a)(4), "[t]he focus of the rule is on the *effect* of a lawyer's conduct on the administration of justice, rather than on the lawyer's state of mind when the conduct is undertaken").[11] To establish a violation of RPC 8.4(a)(4), the Bar must prove by clear and convincing evidence that (1) respondent's actions were "improper"; (2) the conduct occurred during the course of a judicial proceeding; and (3) the conduct had or could have had a prejudicial effect on the administration of justice. *In re Ard*, 369 Or 180, 193, 501 P3d 1036 (2021). The parties do not dispute that the alleged misconduct occurred during judicial proceedings; thus, we consider only the first and third elements of RPC 8.4(a)(4). As we will explain, we ultimately conclude that the Bar established that respondent's actions were improper but failed to establish that his conduct had or could have had a prejudicial effect on the administration of justice.

The trial panel concluded that the Bar had failed to prove that the acts complained of were improper because the trial panel had concluded that respondent had not violated either RPC 3.3(a)(1) or RPC 3.3(a)(4). Unlike the trial panel, however, our conclusion that respondent did not violate either RPC 3.3(a)(1) or RPC 3.3(a)(4) was entirely due to our conclusion that the Bar failed to prove that respondent

---

[11]  This court has observed that *former* DR 1-102(A)(4) was "identical" to RPC 8.4(a)(4), and thus the case law interpreting the former rule is pertinent to our analysis under the current rule. *Paulson*, 346 Or at 683 n 5.

acted "knowingly."[12] A lawyer's actions are improper if "the lawyer did something he or she should not have done or failed to do something that the lawyer should have done." *In re Skagen*, 342 Or 183, 213, 149 P3d 1171 (2006) (applying *former* DR 1-1-2(A)(4)). As explained above, numerous sources of law created an obligation for respondent to disclose the existence of the known will when claiming in an *ex parte* proceeding that decedent had "died intestate." 375 Or at 56-58. We thus conclude that respondent's conduct was "improper" for purposes of RPC 8.4(a)(4).

Nevertheless, we are not persuaded in this case that respondent's single proven omission created the kind of substantial prejudice or substantial potential prejudice that is necessary to establish that respondent's conduct was "prejudicial to the administration of justice." We have explained that prejudice to the administration of justice occurs "when the lawyer's conduct harms (or has the potential to harm) either the substantive rights of a party to the proceeding or the procedural functioning of a case or hearing," or both. *In re Maurer*, 364 Or 190, 199, 431 P3d 410 (2018). When the conduct consists of a single act—as we have found here— we have required the Bar to prove that the lawyer's conduct "caused or could have caused substantial harm." *Id.* at 200; *see also In re Lawrence*, 350 Or 480, 485-86, 256 P3d 1070 (2011) (explaining that to establish a violation of RPC 8.4(a)(4), the Bar must prove that "a single act" could have caused "substantial harm to the administration of justice" or that "several acts" had the potential to "cause some harm"). The Bar maintains that respondent's failure to disclose the will caused substantial harm to Arguelles (in the form of increased legal bills and anxiety about losing her

---

[12] This court has twice held that conduct was not "improper" for purposes of RPC 8.4(a)(4) if the conduct "has been found not to violate the disciplinary rules," citing *Marandas*, 351 Or at 537-38. *In re McGraw*, 362 Or 667, 691, 414 P3d 841 (2018). But in both *McGraw* and *Marandas*, the conclusion flowed from a failure to prove the allegedly improper *conduct*. *See McGraw*, 362 Or at 683, 692 (having rejected contention that lawyer had asserted a frivolous legal position in violation of RPC 3.1, court also rejected contention that the lawyer had violated RPC 8.4(a)(4) by taking that nonfrivolous legal position); *Marandas*, 351 Or at 537-38 (because lawyer's assertion of plausible legal positions was not a violation of disciplinary rules prohibiting misrepresentations, court rejected assertion that the lawyer's conduct was "improper" for purposes of RPC 8.4(a)(4)). We have not held that a violation of RPC 8.4(a)(4) can only be proven by a violation of additional disciplinary rules.

house); to his own client (who was ultimately responsible for Arguelles's increased legal bills); to the court (in the form of substantial time and resources expended to resolve an unnecessary case); and to the legal system as a whole.

We emphasize, however, that it was only respondent's failure to disclose the challenged will—not the filing of a petition to administer an "intestate" estate—that was improper. Of the actual prejudice that the Bar identifies, we are persuaded that respondent's filing of a petition to administer an "intestate" estate without disclosing the existence of the will, at most, prompted Arguelles's lawyer, Hamilton, to allege the existence of the 2017 will when he filed an objection and challenge to the appointment of Montre as personal representative. However, given Arguelles's interest in opposing probate of the 2017 will—after Zantello amended the petition to plead the existence of that will—we are not persuaded that respondent's failure to disclose the 2017 will in the initial pleading meaningfully increased the legal work. No evidence contradicts testimony from Zantello that the filing of the "intestate" petition did not result in Montre receiving any assets or information that he would not have had without the petition being filed. Nor has the Bar explained how the intestate probate petition—rather than the trust- and-will-contest case—threatened Arguelles's interest in the house. And the Bar has not established that the court's devotion of resources to the probate case would have been substantially different if respondent had disclosed the challenged will, given that it signed a single judgment opening administration of the estate and issuing authorization for Montre to serve as personal representative. The record shows that, even after the existence of the contested will and trust was disclosed by Zantello in the amended petition, Judge Collins continued to hold the probate case open for administration and continued Montre's appointment as personal representative, pending resolution of the related challenges to the trust and will in the related case.

The Bar also has not convinced us that respondent's omission created substantial *potential* harm. We emphasize that the failure to disclose a material fact in a court pleading,

particularly in *ex parte* matters, is improper and has the potential to be substantially prejudicial to the administration of justice. *See, e.g.*, *Greene*, 290 Or at 297 (emphasizing that "[e]xtremely important judicial decisions are often made in probate cases, injunction cases and domestic relations cases on *ex parte* application of lawyers" and that "[j]udges must be able to rely upon the integrity of the lawyer."). But in assessing potential harm, our cases have considered the specific facts of the case, rather than simply potential harm in the abstract. *See Kluge*, 335 Or at 338-39 (where lawyer's improper conduct was continuing to represent client despite knowing that he had a conflict of interest and would be called as a witness in litigation involving client, pointing to potential harm from that testimony); *Lawrence*, 350 Or at 487-90 (in concluding that Bar had not proven substantial potential harm from allegedly improper release of part of victim's testimony from a juvenile case, emphasizing that the information in the released partial transcript had been presented in open court and had already been reported by the press).

Filing an "intestate" probate petition without disclosing the existence of a will whose validity is disputed certainly could raise the potential for harm, in a different case. In some circumstances, that act creates risk that assets will be improperly distributed, that the wrong person will be appointed as personal representative, or that the court or opposing parties will devote unnecessary resources to the case. But we are not persuaded that respondent's conduct created that potential for those harms in this case. In particular, we are persuaded that respondent's open challenge to the 2017 will and related trust in contemporaneous litigation filed in the same court and involving the same opposing party and lawyer mitigated the risk of harm to the administration of justice as a whole. Similarly, the facts that Montre was the designated personal representative under the 2017 will—and that the estate's only asset was tied up in the trust of which Arguelles was beneficiary—eliminated the risk that the "intestate" probate case would alter the distribution of the only asset at issue, the McMinnville house. Finally, the record is entirely consistent with respondent's testimony that he had no intention of moving forward with

distribution of estate assets until his challenge to the trust was resolved in the related case, because decedent's assets were assigned to the trust that respondent was challenging. Accordingly, the Bar has failed to persuade us by clear and convincing evidence that, under the circumstances of this case, respondent's improper failure to attach or describe the challenged will when seeking to open administration of an "intestate" estate was prejudicial to the administration of justice.

For these reasons, we conclude that respondent did not violate RPC 8.4(a)(4).

### III.   CONCLUSION

We conclude that respondent did not violate RPC 3.3(a)(1), because the statement that decedent "died intestate" was a plausible legal position on an open question. We also conclude that respondent did not violate RPC 3.3(a)(1) or RPC 3.3(a)(4) by failing to disclose the 2017 will in the probate case, because the record does not establish that he knew he was misrepresenting the status of decedent's estate or knew that he needed to do more to disclose the existence of the challenged will. Finally, we conclude that respondent did not violate RPC 8.4(a)(4), even though it was improper to have failed to disclose the existence of the 2017 will, because, under the circumstances, that omission did not cause substantial harm or potential risk of substantial harm. Having concluded that that the Bar failed to prove any violation of the RPCs by clear and convincing evidence, we affirm the trial panel.

The complaint is dismissed.